## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SUSAN BACS and ARON BACS,

                Plaintiffs,

      v.

CAPITAL ONE FINANCIAL
CORPORATION,

                Defendant.

Case No. 8:21-cv-02852

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MEMORANDUM OF LAW

### MORGAN, LEWIS & BOCKIUS LLP

Jeremy P. Blumenfeld (*pro hac vice*)
Shelby M. Krafka (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com
shelby.krafka@morganlewis.com

Christopher M. Diffee (*pro hac vice*)
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Fax: (212) 309-6001
christopher.diffee@morganlewis.com

Franco Bacigalupo
Florida Bar No. 0119055
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: (305) 415-3304
Fax: (305) 415-3001
franco.bacigalupo@morganlewis.com

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

FACTUAL ALLEGATIONS ................................................................ 3

PLAINTIFFS' CLAIMS ....................................................................... 4

ARGUMENT ........................................................................................ 5

I.   LEGAL STANDARD .................................................................. 5

    A.   Rule 12(b)(1) ....................................................................... 5

    B.   Rule 12(b)(6) ....................................................................... 6

II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE CONSTITUTIONAL AND STATUTORY STANDING ............ 6

    A.   Plaintiffs Do Not Allege Facts Demonstrating Article III Standing for Their Claims ................................................... 6

        1.   Plaintiffs' "Informational Injury" Does Not Satisfy the Requirements of Article III ........................................ 7

        2.   Plaintiffs Do Not Plead a Causal Connection Between the Missing Notice Information and Their Decision Not to Elect COBRA Coverage ............................................. 9

    B.   Plaintiffs Do Not Allege That They Are "Participants" or "Beneficiaries" as Defined by ERISA and Therefore They Lack Statutory Standing Under ERISA ............................... 12

III.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6) ....................... 14

    A.   ERISA Only Authorizes a Claim for Penalties for Violations of Statutory Requirements, Not Regulations .......................... 14

    B.   ERISA Does Not Authorize Penalties to Beneficiaries, So Aron Bacs Fails to State a Claim ............................................... 16

    C.   The Capital One Notice Satisfies the Department of Labor Regulations ..................................................................... 17

CONCLUSION ................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
  116 F.3d 1364 (11th Cir. 1997)...................................................4

*Bryant v. Wal-Mart Stores, Inc.,*
  2020 WL 4333452 (S.D. Fla. July 20, 2020).......................... 9, 10, 11

*Carter v. Sw. Airlines Co.,*
  2020 WL 7334504 (M.D. Fla. Dec. 14, 2020) ......................... 8, 9, 10, 11, 19, 20

*Day v. Taylor,*
  400 F.3d 1272 (11th Cir. 2005)...................................................4

*Firestone Tire & Rubber Co. v. Bruch,*
  489 U.S. 101 (1989) ..................................................................12

*Green v. FCA U.S. LLC,*
  2021 WL 1750118 (E.D. Mich. May 4, 2021)...................................9

*Griffin Indus., Inc. v. Irvin,*
  496 F.3d 1189 (11th Cir. 2007)..............................................4, 24

*Groves v. Modified Ret. Plan,*
  803 F.2d 109 (3d Cir. 1986) ......................................................15

*Hibbs v. Winn,*
  542 U.S. 88 (2004) ....................................................................23

*Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.,*
  641 F.3d 1259 (11th Cir. 2011)...................................................10

*Keene Corp. v. United States,*
  508 U.S. 200 (1993) ..................................................................15

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ....................................................................2

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) .................................................................5

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) (en banc) .........................................7, 9

*Nicklaw v. CitiMortgage, Inc.*,
  839 F.3d 998 (11th Cir. 2016) .................................................................7

*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*,
  371 F.3d 1291 (11th Cir. 2004).............................................................12

*Raymond v. Mobil Oil Corp.*,
  983 F.2d 1528 (10th Cir. 1993)........................................................ 12, 13

*Russello v. United States*,
  464 U.S. 16 (1983) ...............................................................................15

*Salcedo v. Hanna*,
  936 F.3d 1162 (11th Cir. 2019)...............................................................7

*Schwartz v. ADP, Inc.*,
  2021 WL 3172029 (M.D. Fla., July 26, 2021) ...................................13

*Simpson v. Sanderson Farms, Inc.*,
  744 F.3d 702 (11th Cir. 2014) .................................................................6

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006)...............................................................6

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................6, 7

*Stalley v. Orlando Reg. Healthcare Sys.*,
  524 F.3d 1229 (11th Cir. 2008)...............................................................5

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)............................................................................8

*Trichell v. Midland Credit Mgmt., Inc.*,
  964 F.3d 990 (11th Cir. 2020) ....................................................... 1, 8, 9

*Valdivieso v. Cushman & Wakefield, Inc.*,
  2017 WL 2191053 (M.D. Fla. May 18, 2017)......................................25

*Warth v. Seldin*,
 422 U.S. 490 (1975) ........................................................................6

*Wilczynski v Lumbermens Mut. Cas. Co.*,
 93 F.3d 397 (7th Cir. 1996) ..........................................................15

*Williamson v. Travelport, LP*,
 953 F.3d 1278 (11th Cir. 2020)..................................................2, 15

*Wright v. Hanna Steel Corp.*,
 270 F.3d 1336 (11th Cir. 2001)............................................2, 16, 17

**Statutes**

29 U.S.C. § 1002 / ERISA section 3 .............................................12, 19

29 U.S.C. § 1132 / ERISA section 502 ........................................*passim*

29 U.S.C. § 1162 / ERISA section 602............................................13, 21

29 U.S.C. § 1166 / ERISA section 606..........................................1, 4, 17

**Other Authorities**

29 C.F.R. § 2590.606-4 ...............................................................*passim*

29 C.F.R. § 2560.503-1 ....................................................................15

# INTRODUCTION

In this putative class action, plaintiffs Susan and Aron Bacs (together, "Plaintiffs") allege that Capital One Financial Corporation ("Defendant" or "Capital One") did not provide them with a satisfactory notice of their rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") following Susan Bacs' termination in November 2018.  Plaintiffs do *not* allege that the Capital One notice (the "Notice") was not timely provided, as required by statute, *see* 29 U.S.C. § 1166(a)(4), or that the Notice omitted critical information regarding the cost of coverage or how to enroll.  Rather, Plaintiffs' entire Complaint boils down to purported technical omissions of information that Plaintiffs claim (incorrectly) is required by the Department of Labor's regulations under 29 C.F.R. § 2950.606-4(b)(4).[1]  For the reasons explained below, Plaintiffs' claims are subject to dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

First, as a threshold matter, Plaintiffs lack Article III constitutional and statutory standing for their claims.  The Eleventh Circuit has held that an "informational injury" as Plaintiffs allege here is not the kind of "concrete injury" required by Article III.  *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004

---

[1] In fact, this Complaint is just one of more than forty nearly identical COBRA class action complaints filed by Plaintiffs' counsel in recent years.  The actions have targeted some of the largest employers in the United States, including Walmart, Amazon, General Motors, Lockheed Martin, Citigroup, Wells Fargo, JPMorgan, Starbucks, Comcast, Fiat Chrysler, Bank of America, Target, Best Buy, Lowe's, Home Depot, PepsiCo, Coca Cola, United Healthcare, Delta, Southwest Airlines, Nestle, PetSmart, Costco, and McDonald's.  As a result, almost identical class actions continue to be filed on a monthly basis.

(11th Cir. 2020).  Regarding the loss of health care coverage, Plaintiffs fail to plausibly allege that the technical deficiencies they identify in the Notice *caused them* to decline COBRA coverage, as is separately required by Article III.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs thus lack Article III standing for their claims.

Plaintiffs separately lack statutory standing under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by COBRA.  ERISA authorizes only "participants" or "beneficiaries" who are eligible for plan benefits to bring actions.  *See* 29 U.S.C. § 1132(a)(1)(a).  Plaintiffs filed the Complaint on December 7, 2021, more than *three years* after receiving their COBRA Notice and more than *18 months* after any COBRA coverage they could have elected would have ended.  Plaintiffs were thus neither "participants" nor "beneficiaries" when they filed the Complaint and have no statutory standing to press claims under ERISA.

Second, ERISA does not authorize Plaintiffs' claims for penalties for two reasons: (a) ERISA's penalty statute, 29 U.S.C. § 1132(c)(1), must be "strictly and narrowly construed" and only authorizes penalties for violations of specific *statutory* provisions, not Department of Labor *regulations* like those Plaintiffs allege were violated here, *see Williamson v. Travelport, LP*, 953 F.3d 1278, 1296 (11th Cir. 2020); and (b) Plaintiff Aron Bacs was, at most, a "beneficiary" under ERISA when he participated in the Capital One health plan (the "Plan"), and such penalties are only available to a "participant," *see Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001).

Third, the Notice sent to Plaintiffs satisfies every legal requirement that Plaintiffs cite. The Notice names Anthem Blue Cross Blue Shield ("Anthem") as "the party responsible under the plan for the administration of continuation coverage benefits" (as required by 29 C.F.R. § 2590.606-4(b)(4)(i)). There is no requirement to separately identify the "Plan Administrator," as the Department of Labor recently confirmed. And the Notice sent to Plaintiffs provides an "*explanation of* the continuation coverage termination date" (as required by 29 C.F.R. § 2590.606-4(b)(4)(viii)) (emphasis added), including when Plaintiffs' COBRA coverage would begin and how long it would last in the different circumstances laid out by the statute, as required. Plaintiffs' argument that the regulation requires more is based on a misreading of the regulation upon which they rely. Accordingly, Plaintiffs' Complaint fails to state a claim.

For these reasons, and the reasons stated below, Defendant respectfully requests the Court dismiss Plaintiffs' Complaint with prejudice.

## FACTUAL ALLEGATIONS

Susan Bacs is a former Capital One employee who participated in the Plan until her termination on November 26, 2018. ECF No. 1 ("Compl.") ¶¶ 25-26. Eight days later, on December 4, 2018, Defendant mailed Plaintiffs the Notice, informing Ms. Bacs and her husband that they were entitled to continue their Plan coverage under COBRA. Compl. ¶ 27. The Notice that Plaintiffs received, attached to this

motion as Exhibit A ("Notice"),[2] is a 16-page document entitled "COBRA Coverage Election Notice," which provided Plaintiffs with individualized explanatory information about their specific COBRA coverage.  Among other things, the Notice explained the deadline to make a decision and when COBRA coverage would start (Notice at 1); how much coverage would cost (*id.* at 4); how long coverage would last and when it would end under different circumstances (*id.* at 7); how to sign up for coverage (by either mailing in a paper form or going online) (*id.* at 3, 6-7); how to pay and when payment was due (*id.* at 9-10); and whom to contact at Anthem with questions (*id.* at 2, 13).  Plaintiffs chose not to elect coverage.  Compl. ¶ 29.

## PLAINTIFFS' CLAIMS

More than three years after receiving the Capital One Notice, Plaintiffs bring the present action.  Plaintiffs do not allege that the Notice fails to meet the requirements of the COBRA *statute*, 29 U.S.C. § 1166.  *See* Compl. ¶ 23 (summarizing alleged violations).  Instead, Plaintiffs claim that the Notice did not comply with the Department of Labor's *regulations* at 29 C.F.R. § 2590.606-4(b)(4) because it contained three purported deficiencies: (a) it identified Anthem as the COBRA administrator of the Plan (with a phone number and other contact information), but did not also

---

[2] The Court may take judicial notice of the COBRA notice provided to Plaintiffs, as it is integral to the Complaint.  "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal[.]" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  If there is a conflict between the Complaint and the supporting documents, the information contained in the supporting documents controls.  *See, e.g., Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

separately identify the "Plan Administrator" for the Plan; (b) it identified the start date of coverage and the duration of coverage, but failed to include the specific termination date for coverage; and (c) as a result, the Notice was not written "in a manner calculated to be understood by the average participant." *Id.* ¶¶ 3-5.  Plaintiffs also allege that they were "confused" by the Notice and "did not elect COBRA continuation coverage." *Id.* ¶¶ 28-29.

Notably, Plaintiffs do *not* allege that they made any attempt to contact Anthem or Capital One to ask about COBRA coverage or the allegedly missing information.  Nor do Plaintiffs state how these two purported "defects" caused them to decline COBRA coverage that they would have otherwise elected.  That is, Plaintiffs do not allege that they would have elected COBRA coverage if the Capital One Notice had included a specific end date for COBRA coverage and identified the Plan Administrator for the Plan.  Nonetheless, they now seek monetary penalties under 29 U.S.C. § 1132(c)(1) of up to $110 for each day that they did not receive a fully satisfactory COBRA notice.

## ARGUMENT

## I.   LEGAL STANDARD

### A.   Rule 12(b)(1)

When evaluating a motion to dismiss under Rule 12(b)(1), the court must assess whether the plaintiff has alleged a sufficient basis for subject-matter jurisdiction, including Article III constitutional standing.  *Stalley v. Orlando Reg. Healthcare Sys.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008); *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5

(11th Cir. 2003).  The party claiming federal jurisdiction must "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

## B.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A plaintiff need not plead 'detailed factual allegations,' but he must demonstrate 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  While the Court must accept Plaintiffs' well-pleaded facts as true, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (citations omitted).

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE CONSTITUTIONAL AND STATUTORY STANDING.

### A.     Plaintiffs Do Not Allege Facts Demonstrating Article III Standing for Their Claims.

At the threshold, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of constitutional standing.  In order to vest this Court with subject matter jurisdiction, Plaintiffs "must 'clearly . . . allege facts demonstrating'" that they have Article III standing to assert their claims.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  As the party invoking federal jurisdiction,

Plaintiffs have the burden of establishing three necessary and independent elements: that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560-61).

The Complaint attempts to establish standing in two ways. First, the Complaint alleges that Plaintiffs suffered an "informational injury" due to the information allegedly missing from the Notice. Compl. ¶ 30. Second, Plaintiffs allege that they suffered tangible economic injuries in the form of lost health insurance coverage and the purchase of more expensive coverage. *Id*. ¶¶ 31-32. For the reasons explained below, these allegations are insufficient to confer Article III standing.

### 1.   Plaintiffs' "Informational Injury" Does Not Satisfy the Requirements of Article III.

In *Spokeo*, the Supreme Court held that a "bare procedural violation, divorced from any concrete harm," was insufficient to confer Article III standing. 578 U.S. at 341. In the wake of *Spokeo*, the Eleventh Circuit has repeatedly held that, without an actual harm caused by a disclosure violation, a plaintiff lacks Article III standing to challenge that violation. *See Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (finding failure to comply with statutory disclosure requirements is insufficient to confer Article III standing ); *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) (finding no standing for statutory violations because plaintiffs did not allege a "concrete harm" or "real injury"); *Muransky v. Godiva Chocolatier, Inc.*,

979 F.3d 917, 929-34 (11th Cir. 2020) (en banc) (finding a "bare procedural violation" of a statute "divorced from any concrete harm" did not provide Article III injury).

Further, the Eleventh Circuit's recent decision in *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020), directly rejected "informational injury" without actual harm as a basis for Article III standing.  In *Trichell*, the court held that the recipients of allegedly misleading debt-collection letters lacked Article III standing to pursue claims under the Fair Debt Collection Practice Act because, even assuming the letters violated the statute, the letters did not cause them any tangible injury.  The Eleventh Circuit joined other circuits in concluding that "an asserted informational injury that causes no adverse effects cannot satisfy Article III."  *Id.* at 1004.  Recently, the Supreme Court quoted this same language from *Trichell* in setting forth the requirements of Article III standing.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'") (quoting *Trichell*, 964 F.3d at 1004).

Applying these Eleventh Circuit decisions to COBRA notice claims, district courts have dismissed nearly identical allegations of "informational injury" without adverse effects as insufficient to confer constitutional standing.  For example, in *Carter v. Southwest Airlines*, the court dismissed plaintiff's COBRA allegations, finding that the plaintiff had failed to allege "some harm caused by the omission or a material risk of harm," thus failing to satisfy the Eleventh Circuit's standing

requirements under *Muransky* and *Trichell*.  2020 WL 7334504, at *5 (M.D. Fla. Dec.

14, 2020) (Jung, J.).  Likewise, in *Bryant v. Wal-Mart Stores, Inc.*, the magistrate judge

found plaintiffs lacked constitutional standing to bring COBRA claims similar to the

ones here, concluding the plaintiffs had "demonstrated, at most, a technical,

procedural violation which did not cause them actual harm" and which, following

*Trichell*, "is not the type of informational injury which can confer standing."  2020

WL 4333452, at *16-18 (S.D. Fla. July 15, 2020) (magistrate's report and

recommendation addressing standing in the context of plaintiffs' motion for class

certification).[3]  Plaintiffs' claims of "informational injury" here are indistinguishable

from the claims rejected in *Bryant* and *Carter*, and should be dismissed on the same

grounds.

### 2.    Plaintiffs Do Not Plead a Causal Connection Between the Missing Notice Information and Their Decision Not to Elect COBRA Coverage.

Beyond "informational injury," Plaintiffs assert that they did not elect

COBRA coverage and incurred other medical costs.  Compl. ¶¶ 31-32.  But these

injuries run afoul of the second required element of constitutional standing—

demonstrating a *causal connection* between the alleged wrongdoing and the claimed

---

[3] The district court in *Bryant* did not have an opportunity to adopt (or otherwise address) the magistrate's report and recommendation because the parties filed a joint stipulation voluntarily dismissing all claims.  *See Bryant v. Wal-Mart Stores, Inc.*, No. 1:16-cv-24818-JEM (S.D. Fla. July 20, 2020), ECF No. 186.  *See also Green v. FCA U.S. LLC*, 2021 WL 1750118, at *4 (E.D. Mich. May 4, 2021) (plaintiffs lacked Article III standing to pursue COBRA claims where plaintiffs failed to allege how or why they were harmed by the notice's failure to identify the "Plan Administrator").

injury.  An individual can decide whether to elect or decline COBRA coverage for many reasons, including her own specific financial, family, health, and employment circumstances, the alternatives available to her, and her personal cost-benefit analysis.  But "[t]he causation element of Article III standing requires 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant.'"  *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560).  In other words, to satisfy the causation requirement of Article III, a plaintiff needs to allege that she declined COBRA coverage and incurred other medical expenses *because* specific required information was not included in her COBRA notice, and she would have elected COBRA coverage if that information had been included.

Applying the causation requirement of Article III, the court in *Carter* concluded that the plaintiff lacked standing because she did not allege that the allegedly missing information actually caused her to decline COBRA coverage and incur the subsequent medical expenses.  2020 WL 7334504, at *5-7 (complaint failed to explain why the failure to include specific information "harmed her or how it interfered with her ability to elect COBRA coverage").  *See also Bryant*, 2020 WL 4333452, at *17-18 (finding no evidence of "any causal connection between the alleged COBRA notice deficiency [to identify the plan administrator] and any harm (economic or 'informational') that they claim to have suffered").

Here, too, the Complaint presents no plausible causal connection between the alleged technical deficiencies in the Notice and Plaintiffs' decision not to elect COBRA coverage.  For instance, Plaintiffs state that, although the Notice clearly identifies the Plan's third-party COBRA administrator (who is the appropriate entity to contact with COBRA-related questions and enroll in coverage),[4] the Notice does not separately identify the "Plan Administrator."  Compl. ¶¶ 41-43.  Yet the Complaint fails to explain how the failure to identify the "Plan Administrator" caused her not to enroll in COBRA coverage.  *Id.*  Likewise, Plaintiffs fail to plead any causal connection between the failure to identify the specific potential termination date(s) of COBRA coverage in the future and their decision not to enroll in COBRA coverage in the first instance.  *Id.* ¶¶ 38-39.  And, finally, in the one single paragraph where Plaintiffs allege the Notice was not written in a sufficiently clear manner because it omitted certain information, *see id.* ¶ 44, Plaintiffs again fail to make *any* link between these technical omissions and the decision to decline COBRA coverage.  The court in *Carter* dismissed similar allegations that failed to draw the required causal connection, and this Court should dismiss Plaintiffs' claims on the same grounds.  *See Carter*, 2020 WL 7334504, at *5 (no Article III standing because plaintiff failed to explain why the failure to include the specified information

---

[4] *See Bryant*, 2020 WL 4333452, at *17 n. 14 ("Nor does it make sense that a plaintiff would suffer any harm—informational or actual—from notices like the ones in this case [which] give[] the name and contact information of an expert third-party administrator, when that is *exactly* the best entity for the employee to call for information about COBRA . . . ." (emphasis in original) (quoting *amicus curiae*)).

"harmed her or how it interfered with her ability to elect COBRA coverage"); *id.* at

*7 (no Article III standing where plaintiff "fails to explain how these alleged

deficiencies led to her inability to understand the notice in a way that impeded her

decision to elect or not elect COBRA coverage").

### B. Plaintiffs Do Not Allege That They Are "Participants" or "Beneficiaries" as Defined by ERISA and Therefore They Lack Statutory Standing Under ERISA.

Plaintiffs' claims also are subject to dismissal pursuant to Fed. R. Civ. P.

12(b)(6), because Plaintiffs do not allege statutory standing for their claims under

ERISA.  To maintain a cause of action under ERISA for penalties under 29 U.S.C.

§ 1132(c), a plaintiff must have standing as a "participant or beneficiary."  *See* 29

U.S.C. § 1132(a)(1)(A) (authorizing a "participant or beneficiary" to bring a claim

under 29 U.S.C. § 1132(c)); *see also Physicians Multispecialty Grp. v. Health Care Plan of

Horton Homes, Inc.*, 371 F.3d 1291, 1293-94 (11th Cir. 2004); *Raymond v. Mobil Oil

Corp.*, 983 F.2d 1528, 1533-35 (10th Cir. 1993).  ERISA, in turn, defines

"participant" as "any employee or former employee . . . who is or may become

eligible to receive a benefit of any type from an employee benefit plan."  29 U.S.C.

§ 1002(7); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)

(elaborating that "former employees" include those with "a reasonable expectation

of returning to covered employment or who have a colorable claim to vested

benefits").  Likewise, a "beneficiary" is defined under 29 U.S.C. § 1002(8) as a

person "who is or may become entitled to a benefit" under an employee benefit plan.

Based on the specific definitions in the statute for a "participant" or "beneficiary," courts have held that ERISA does not provide a cause of action to former employees (or their spouses) who are not in the plan or otherwise eligible for plan benefits at the time the complaint is filed.  *See, e.g.*, *Schwartz v. ADP, Inc.*, 2021 WL 3172029, at \*4-5 (M.D. Fla., July 26, 2021); *Raymond*, 983 F.2d at 1533-35.  In *Schwartz*, for example, the court dismissed COBRA notices claims brought by a former employee who filed the complaint long after the 18-month COBRA coverage period had lapsed.  2021 WL 3172029 at \*5.  The court reasoned that, because the plaintiff had no possible entitlement to plan benefits even under COBRA, he lacked standing to bring his COBRA notice claims under ERISA.  *Id.* at 5 (citing 29 U.S.C. § 1162(2)(A)).  The court further explained that, without this showing, the plaintiff "must identify a colorable claim to some other current or future vested benefit."  *Id.* As the plaintiff failed to plead either, the court dismissed his COBRA notice claim. *Id.*

That analysis applies here.  Plaintiffs here, like the plaintiff in *Schwartz*, filed suit more than 18 months after they received the COBRA notice.  Just like in *Schwartz*, had Plaintiffs elected COBRA coverage, the 18-month COBRA period would have ended in June 2020—more than *18 months* before Plaintiffs filed their Complaint on December 7, 2021.[5]  *See* Notice at 1.  Simply put, there is no

---

[5] Even if Plaintiffs were permitted to extend COBRA coverage to the maximum 36-month period allowed by 29 U.S.C. § 1162, coverage still would have ended before the date of the Complaint here.

circumstance in which Plaintiffs had a colorable claim to any Plan benefits—under

COBRA or otherwise—when the Complaint was filed.  They were neither

"participants" nor "beneficiaries" under ERISA, and therefore lack statutory

standing for their claims.

## III.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6).

Even if they had standing to press them, Plaintiffs' claims fail as a matter of

law because ERISA does not authorize a claim for penalties for alleged violations of

Department of Labor regulations and because the Capital One Notice satisfies the

applicable regulatory requirements.

### A.   ERISA Only Authorizes a Claim for Penalties for Violations of Statutory Requirements, Not Regulations.

Plaintiffs claim that they can pursue a claim for penalties of $110 per day

under 29 U.S.C. § 1132(c)(1) based on the Notice's alleged violation of Department

of Labor regulations.  Compl. ¶ 23 (listing regulations allegedly violated).

That is wrong as a matter of law.  By its terms, 29 U.S.C. § 1132(c)(1) only

authorizes the imposition of penalties for violations of specific *statutory* provisions—

not regulations promulgated under those statutes.  29 U.S.C. § 1132(c)(1) (listing

specific statutes and "this subchapter" but not "regulations").  By contrast, other

parts of ERISA's enforcement provisions explicitly allow an assessment of penalties

for violation of "regulations."  *See, e.g.*, 29 U.S.C. § 1132(c)(5) (authorizing a penalty

to be assessed for the "failure or refusal to file the information required to be filed by

such person with the Secretary *under regulations*" (emphasis added)).  That deliberate

choice by Congress must be respected. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (same).

That principle is particularly true here. The Eleventh Circuit has held that 29 U.S.C. § 1132(c) is a "penal" provision and therefore "must be strictly and narrowly construed." *Williamson v. Travelport, LP*, 953 F.3d 1278, 1293 (11th Cir. 2020). For these reasons, penalties under 29 U.S.C. § 1132(c)(1) apply only to violations of *the statute* and not to violations of *regulations* promulgated under the statute. *Williamson*, 953 F.3d at 1296 ("§ 1132(c) penalizes violations 'under this subchapter,' and *not violations of federal regulations*" (emphasis added) (citing *Groves v. Modified Ret. Plan*, 803 F.2d 109, 116 (3d Cir. 1986) ("Because § 502(c) authorizes penalties only for breach of duties under 'this subchapter' [of the statute], such sanctions cannot be imposed for violation of an agency regulation."))); *see also Wilczynski v Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406-07 (7th Cir. 1996) (following *Groves* to conclude that "section 1132(c) does not apply to violations of [the regulation, namely] 29 C.F.R. § 2560.503-1(g)").

Here, as in *Williamson*, *Groves*, and *Wilczynski*, Plaintiffs do not allege any violation of the statute itself. Instead, Plaintiffs allege only violations of the Department of Labor's COBRA regulations at 29 C.F.R. § 2590.606-4(b)(4). *See*

Compl. ¶ 23 (specifying how the Notice allegedly violates three subsections of § 2590.606-4(b)(4)).  The statute does not authorize penalties for violations of those regulations.  Accordingly, as a matter of law, Plaintiffs fail to state a claim for penalties under 29 U.S.C. § 1132(c)(1).

> **B.    ERISA Does Not Authorize Penalties to Beneficiaries, So Aron Bacs Fails to State a Claim.**

In addition, Plaintiff Aron Bacs is not entitled to penalties under § 1132(c)(1) for the separate reason that he was, at most, a *beneficiary* of participant Susan Bacs. Compl. ¶ 26.  The Eleventh Circuit held in *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1434-44 (11th Cir. 2001), that penalties under § 1132(c)(1) apply *only* to the participant and *not* to that participant's beneficiaries.  The court relied upon the plain language of § 1132(c)(1), which states in relevant part:

> Any administrator (A) who fails to meet the [notification] requirements of paragraph . . . (4) of section 1166 of this title . . . with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, *each violation described in subparagraph (A) with respect to any single participant*, and each violation described in subparagraph (B) with respect to any single *participant or beneficiary*, *shall be treated as a separate violation*.

*Id.* at 1343-44 (emphasis in original; some emphasis omitted) (quoting § 1132(c)(1)). As the court in *Wright* noted, under § 1132(c)(1), "a district court may assess a penalty separately only as to any single *participant*" but not for any *beneficiaries* of that participant, as "penalties for beneficiaries are not available." *Id.* at 1344.  The *Wright*

court thus upheld the lower court's award to Mr. Wright as the plan participant, but found no statutory penalty could be awarded to Wright's wife and children because they were his beneficiaries under the plan.[6] *Id.*

Here, Plaintiffs state that Susan Bacs was a participant in the Plan and that her husband, Aron Bacs, was her beneficiary. Compl. ¶¶ 25-26. Plaintiffs do not allege that they made a request for information under subparagraph (B) of the statute. Instead, they allege that they are entitled to penalties under subparagraph (A), which addresses the notification requirements of the COBRA statute, 29 U.S.C. § 1166. *See* Compl. ¶¶ 19, 30. As in *Wright*, penalties are not available to a beneficiary under those circumstances. Thus, Mr. Bacs fails to state a penalty claim under ERISA.

## C. The Capital One Notice Satisfies the Department of Labor Regulations.

In any event, contrary to Plaintiffs' allegations, the Capital One Notice complies with the applicable Department of Labor regulations.

In the Complaint, Plaintiffs allege that the Notice does not meet the requirements of the regulations because it (a) does not identify the "Plan Administrator" (Compl. ¶ 42); (b) does not identify when COBRA coverage would end (*id.* ¶ 34); and (c) because of (a) and (b), is not written in a sufficiently understandable manner (*id.* ¶ 44). Plaintiffs are wrong as to each.

---

[6] Importantly, in *Wright*, penalties under § 1132(c)(4) were available because the plaintiffs alleged violations of the COBRA statute itself for failure to provide the notice required by 29 U.S.C. § 1166(a)(4). 270 F.3d at 1434. It did not involve only violations of the underlying regulations, as Plaintiffs do here.

### 1.  The Notice Satisfies the Regulations Because It Identifies the Party Responsible for Administering COBRA Benefits.

Plaintiffs claim that the Notice fails to provide the name and address of the "Plan Administrator" in violation of 29 C.F.R. § 2590.606-4(b)(4)(i).  Compl. ¶¶ 41-43.  But Plaintiffs are trying to graft requirements onto the regulation that do not exist.  The plain language of the regulation requires only that the notice "contain . . . the name, address and telephone number of *the party responsible under the plan for the administration of continuation coverage benefits*."  29 C.F.R. § 2590.606-4(b)(4)(i) (emphasis added).  Consistent with this requirement, the Notice repeatedly names Anthem as the "party responsible under the plan" for COBRA benefits and repeatedly provides Anthem's telephone number and address, as required.  For instance:

- "Anthem Blue Cross and Blue Shield (Anthem) has been retained by Capital One Financial to notify you and/or your covered dependent children ('Qualified Beneficiaries') of your rights to a temporary extension of group health plan coverage ('COBRA coverage')" (Notice at 1);

- "If you have any questions about this notice or need further information about your rights to elect COBRA coverage, please contact Anthem at 877-775-9393" (*id.* at 2); and

- "mail the completed COBRA Coverage Election Form . . . to Anthem at the following address: Anthem Blue Cross and Blue Shield, PO Box 660350, Dallas, TX 660350" (*id.* at 3).

Indeed, the Notice identifies Anthem over *70 times*, provides Anthem's telephone number *three times*, and includes its mailing address *four times*.  There is no question the Notice readily satisfies the regulation.[7]

---

[7] Plaintiffs' assertion that the Notice must separately identify the "Plan Administrator" is also undermined by the Department of Labor model notice.  *See* ECF No. 1-1 (Ex. A to the

Plaintiffs' argument that a COBRA notice must also identify the "Plan Administrator" for the plan is wrong.  First, this same claim was dismissed by this court in *Carter*.  *See* 2020 WL 7334504, at *5-7.  Rejecting the argument of Plaintiffs' same counsel that the COBRA regulations require the separate identification of the "Plan Administrator" (in addition to the third-party COBRA administrator), the court first noted that "Plan Administrator" was a term of art under ERISA and was defined in ERISA section 3(21)(A).  *Id.* at *6.  Yet, the court explained, the COBRA regulations in 29 C.F.R. § 2590.606-4(b) never cite this statutory definition, nor does the term "plan administrator" ever appear.  *Id.*  The *Carter* court noted that it was a canon of statutory construction not to insert an omitted term into plainly written text, and that, while this section of the regulations omitted reference to the "plan administrator," other sections of the COBRA regulations made explicit reference to the term, showing that the absence of that term in subsection (b)(4)(i) was deliberate. *Id.*  The court also noted that guidance provided by the Secretary of Labor in the preamble to the regulation supported this interpretation by separately referring to "COBRA administrators" and "plan administrators."  *Id.*  Finally, the court noted

_____

Complaint, Department of Labor Model Notice ("DOL Model Notice")).  The DOL Model Notice does not identify the Plan Administrator anywhere, but instead refers to the "party responsible for COBRA administration."  *See, e.g.*, Model Notice at 3 ("If you have any questions about this notice or your rights to COBRA continuation coverage, you should contact [enter *name of party responsible for COBRA administration for the Plan*, with telephone number and address].") (emphasis added).  Here, the Notice repeatedly provides the name, address, and telephone number of Anthem, who is the "party responsible for COBRA administration" under the Plan, fully satisfying the Department of Labor regulation and matching the language suggested in the DOL Model Notice.

that providing the name of the COBRA administrator, rather than the plan administrator, made sense from a practical perspective, as most large businesses delegated COBRA administration to third-party administrators, confirming the importance of distinguishing between these two entities as the statute and regulations do. *Id.* at *7.

Second, the Department of Labor, the agency that promulgated the regulation Plaintiffs rely upon, has confirmed that the regulation does not require a COBRA notice to identify the Plan Administrator for a plan.  In *Carter*, the Department of Labor filed an amicus brief rejecting the plaintiff's argument that the Department of Labor regulations required the COBRA notice to separately identify the "Plan Administrator" (in addition to the actual COBRA administrator), making many of the points subsequently discussed in the court's opinion, summarized above. *See* Exhibit B, attached hereto.

The same reasoning compels dismissal of Plaintiffs' claims here.  Consistent with *Carter* and the Department of Labor's own amicus brief, the regulation does not require that a COBRA notice identify the "Plan Administrator."  The Capital One Notice identifies the party responsible for administering COBRA benefits.  That satisfies the requirements of the regulation.  Nothing more is required.

> **2.    The Notice Satisfies the Regulations Because It Describes How Long COBRA Coverage Will Last and the Circumstances That Impact the Duration of COBRA Coverage.**

Plaintiffs next claim that the Notice violated 29 C.F.R. § 2590.606-4(b)(4)(viii) because it did not identify the "specific date" on which COBRA coverage would end.

Compl. ¶ 35.  But, once again, Plaintiffs are inventing a requirement not in the regulation.  The regulation requires "[a]n explanation of the maximum period for which continuation coverage will be available under the plan; an explanation of the termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period."  29 C.F.R. § 2590.606-4(b)(4)(viii).

The reason this provision requires an "*explanation* of the termination date"— rather than simply "the termination date" itself—is that there are a number of distinct events that can, pursuant to the statute, set different termination dates or extend or shorten COBRA coverage termination dates based on subsequent events. Specifically, 29 U.S.C. § 1162(2) sets forth several *different* possible durations for COBRA continuation coverage, including (a) an 18-month period when a covered employee is terminated, *see* § 1162(2)(A)(i); (b) a 36-month period if a second qualifying event occurs during the initial 18-month period, *see* § 1162(2)(A)(ii); (c) a 36-month period in the event the covered employee dies, divorces his/her spouse, or a dependent child ceases to be a dependent under the plan, *see* § 1162(2)(A)(iv); and (d) an initial 18-month period will be converted into a 29-month period if a qualified beneficiary is determined to be "disabled" under the Social Security Act, *see* § 1162(2)(A)(viii).  Further, any of these "maximum coverage periods" may be terminated *earlier* in specific circumstances, such as when an employer ceases to provide a group health plan to its employees generally, *see* § 1162(2)(B), or if the qualified beneficiary fails to make timely COBRA payments, *see* § 1162(2)(C).

Accordingly, under the statute itself there is no single "termination date" to include in the Notice.

It therefore makes sense that the plain language of 29 C.F.R. § 2590.606-4(b)(4)(viii) does not require a specific "termination date."  It requires, instead, that the notice provide "*an explanation* of the termination date"—that is, an explanation of when COBRA coverage may terminate under the different circumstances set forth under the statute.  The Capital One Notice does exactly that.  It includes a section titled "Duration of COBRA Coverage," which explains, in detail, the specific factors affecting how long an individual's COBRA coverage may last.  *See* Notice at 7. Among other things, the Notice explains that (a) coverage following an employee's termination will "generally last for up to 18 months," *see id.*; (b) coverage "can last up to 36 months after the date of Medicare entitlement," if the terminated employee becomes eligible for Medicare benefits within 18 months of the qualifying event, *see id.*; and (c) coverage may last for up to 36 months if the loss of coverage occurs "due to the death of the employee, the covered employee's divorce or legal separation, the covered employee's becoming enrolled in Medicare benefits (under Part A, Part B, or both), or a covered child losing eligibility as a child under the terms of the Plan," *see id.*

Next, the Notice separately describes the different circumstances set forth in § 1162(2)(B) & (C) in which coverage might be terminated earlier.  *See* Notice at 8-9. And, further, the Notice describes, in a section entitled "Extending the Duration of COBRA Coverage," additional circumstances in which COBRA coverage might be

extended beyond the initial coverage period, for instance, for an additional 18 months if the beneficiary becomes disabled or experiences a second qualifying event, such as a termination.  *See id*. at 8.

In short, given the many factors that might affect the termination date of COBRA coverage, it would be impossible for any notice to identify a single "specific date" when coverage would necessarily end.  In fact, providing such a single date would be misleading, because there would always be circumstances in which COBRA coverage could end earlier or later.  The regulation acknowledges this fact by requiring the notice to include "an explanation of the termination date" under the different circumstances set forth by COBRA.[8]  The Capital One Notice includes that information and fully satisfies the regulation.

> ### 3.    The Notice Satisfies the Regulations Because It Is Written in a Manner Calculated to Be Understood by the Average Participant.

Faced with the fact that the Notice contains all of the information required by the Department of Labor regulations, Plaintiffs fall back on the regulation's "catch-all" provision and assert that the Notice is not "written in a manner calculated to be understood by the average plan participant."  Compl. ¶ 44 (citing § 2590.606-4(b)(4)).

---

[8] Plaintiffs would, in effect, render the words "an explanation" superfluous and construe the regulation as requiring only "the termination date."  This violates the basic principle of statutory interpretation that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).  Further, Plaintiffs' interpretation would permit COBRA notices to omit an "explanation" of the circumstances in which the duration of COBRA coverage might variously last 18 months, 29 months, or 36 months, or get shortened from these time periods based on subsequent events.

In support of this conclusory allegation, the Complaint alleges the same two supposed flaws in the Notice addressed above.  Plaintiffs are wrong for the same reasons.  *See supra* at 18-23.

Plaintiffs also make the conclusory statement that the Notice fails to "fully explain" the procedures to elect coverage.  Compl. ¶ 44.  But the Complaint alleges no information that is missing from the Notice or how the information is otherwise deficient.  To the contrary, the Notice itself contains clear and detailed instructions on how to enroll in COBRA, including a set of "COBRA Coverage Election Form Instructions," explaining where to mail the completed form, how to elect coverage online via the Anthem website, and the deadline by which to elect coverage.  Notice at 3.  The following two pages of the Notice contain the "COBRA Coverage Election Form" itself, which requires the recipient to check a few boxes to select the types of coverage (e.g., dental and/or medical), the persons covered (e.g., Susan, Aron, and dependents), and whether the employee is enrolled in Medicare Part A, B, or both.  *Id.* at 4-5.  There is nothing unclear or confusing.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits [to a complaint] contradict the general and conclusory allegations of the pleading, the exhibits govern.").

Lastly, the Complaint claims the Notice is confusing because it omits "information pertaining to the consequences of delinquent or missed payments."  Compl. ¶ 44.  But the Notice does include that precise information in the section entitled "Duration of COBRA Coverage," where the Notice states: "The law provides that COBRA coverage may be terminated prior to the end of the maximum coverage

periods described in this notice for any of the following reasons: . . . (2) the premium for COBRA coverage is not paid in a timely manner." Notice at 8. Nothing more is required.

In sum, the Capital One Notice contains all of the information required, and the Complaint does not identify anything in the Notice that is confusing or misleading. Accordingly, Plaintiffs' challenges to the contents of the Notice fail to state a plausible claim. *See Valdivieso v. Cushman & Wakefield, Inc.*, 2017 WL 2191053, at *1 (M.D. Fla. May 18, 2017) (dismissing claim that COBRA notice could not be understood by the average plan participant).

## <u>CONCLUSION</u>

For the above reasons, Defendant respectfully requests that the Court dismiss all of Plaintiffs' claims with prejudice.

Dated: March 11, 2022

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ *Jeremy P. Blumenfeld*

Christopher M. Diffee (*pro hac vice*)
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Fax: (212) 309-6001
christopher.diffee@morganlewis.com

Franco Bacigalupo (Fl. Bar No. 0119055)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: (305) 415-3304
Fax: (305) 415-3001
franco.bacigalupo@morganlewis.com

Jeremy P. Blumenfeld (*pro hac vice*)
Shelby M. Krafka (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com
shelby.krafka@morganlewis.com

*Counsel for Defendant*

25

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the undersigned certifies that on March 9, 2022, counsel for Capital One conferred via email with Brandon J. Hill of the law firm of Wenzel Fenton Cabassa, P.A., one of the attorneys representing Plaintiffs, who advised that Plaintiffs oppose this Motion.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 11, 2022, I electronically filed the foregoing document through the electronic filing system, which in turn will serve it via electronic mail on all counsel of record.

> Brandon J. Hill, Esq.
> Florida Bar Number: 37061
> Direct No.: 813-337-7992
>
> Luis A. Cabassa, Esq.
> Florida Bar Number: 053643
> Direct No.: 813-379-2565
>
> WENZEL FENTON CABASSA, P.A.
> 1110 North Florida Ave., Suite 300
> Tampa, Florida 33602
> Main No.: 813-224-0431
> Facsimile: 813-229-8712
> Email: lcabassa@wfclaw.com
> Email: bhill@wfclaw.com
>
> *Attorneys for Plaintiffs*

> /s/ *Jeremy P. Blumenfeld*
> Jeremy P. Blumenfeld