## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SUSAN BACS and JESSICA ROUBERT,

                Plaintiffs,

      v.                            Case No. 8:21-cv-02852

CAPITAL ONE FINANCIAL
CORPORATION,

                Defendant.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
## FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW

### MORGAN, LEWIS & BOCKIUS LLP

Jeremy P. Blumenfeld (*pro hac vice*)
Shelby M. Krafka (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com
shelby.krafka@morganlewis.com

Christopher M. Diffee (*pro hac vice*)
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Fax: (212) 309-6001
christopher.diffee@morganlewis.com

Franco Bacigalupo
Florida Bar No. 0119055
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: (305) 415-3304
Fax: (305) 415-3001
franco.bacigalupo@morganlewis.com

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

FACTUAL ALLEGATIONS ............................................................... 3

PLAINTIFFS' CLAIMS ...................................................................... 4

ARGUMENT ....................................................................................... 5

I.     LEGAL STANDARD.................................................................... 5

     A.     Rule 12(b)(1)......................................................................... 5

     B.     Rule 12(b)(6)......................................................................... 6

II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE CONSTITUTIONAL AND STATUTORY STANDING..................... 7

     A.     Plaintiffs Lack Article III Standing Because They Fail to Plead a Causal Connection Between the Specific COBRA End Date Information and Their Decision Not to Elect COBRA Coverage................ 7

     B.     Plaintiffs Lack Statutory Standing Under ERISA Because They Do Not Plausibly Allege Facts That They Are "Participants" as Defined by ERISA. ...............................................................................11

III.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)........................................13

     A.     Plaintiffs' Claims for Statutory Penalties in Counts I-III Fail as a Matter of Law Because ERISA Authorizes Penalties Only for Violations of Statutory Requirements, Not Regulations.............................16

     B.     Plaintiffs' Claims for Statutory Penalties in Counts I-III Fail as a Matter of Law Because the Notice Satisfies the Department of Labor Regulations...........................................................................18

          1.     The Notice Satisfies the Regulations Because It Describes How Long COBRA Coverage Will Last and the Circumstances That Impact the Duration of COBRA Coverage.....................................18

     C.     Plaintiffs' Claim for Plan Benefits in Count IV Fails as a Matter of Law Because Plaintiffs Do Not Identify the Benefits to Which They Are Entitled or the Plan Terms That Entitle Them to Those Benefits. .........21

CONCLUSION ...................................................................................24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006) ..............................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................6

*Black & Decker Disability Plan v. Nord*,
   538 U.S. 822 (2003) .....................................................................22

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997)..........................................................4

*Bryant v. Wal-Mart Stores, Inc.*,
   2020 WL 4333452 (S.D. Fla. July 15, 2020) ........................................9

*Carter v. Southwest Airlines*,
   2020 WL 7334504, at *5-7 (M.D. Fla. Dec. 14, 2020) .............................8, 9, 10

*Coles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   2014 WL 12617587 (M.D. Fla. June 18, 2014)........................................22, 23

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005)...........................................................4

*Eaton v. Dorchester Dev., Inc.*,
   692 F.2d 727 (11th Cir. 1982) .........................................................6, 10

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ......................................................................12

*Gilbert v. Alta Health & Life Ins. Co.*,
   276 F.3d 1292 (11th Cir. 2001).........................................................23

*Green v. FCA U.S. LLC*,
   2021 WL 1750118 (E.D. Mich. May 4, 2021)..........................................9

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007).........................................................4

*Groves v. Modified Ret. Plan*,
  803 F.2d 109 (3d Cir. 1986) .................................................................... 17

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  571 U.S. 99 (2013) .................................................................................. 21

*Hibbs v. Winn*,
  542 U.S. 88 (2004) .................................................................................. 21

*Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*,
  641 F.3d 1259 (11th Cir. 2011).................................................................. 8

*Infant Swimming Rsch., Inc. v. Faegre & Benson,
  LLP*, 335 F. App'x 707 (10th Cir. 2009) ........................................... 6, 10

*Keene Corp. v. United States*,
  508 U.S. 200 (1993) ................................................................................ 16

*Kircher v. Cont'l Cas. Co.*,
  2007 WL 1192450 (M.D. Fla. Apr. 23, 2007) .................................... 14

*LaBrache v. Am. Mar. Officers Pension Plan*,
  45 F. Supp. 2d 1335 (M.D. Fla. 1999) ................................................ 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .................................................................................. 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................. 1

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) .................................................................. 6

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) (en banc) .............................................. 11

*Nova Health Sys. v. Gandy*,
  416 F.3d 1149 (10th Cir. 2005).................................................................. 8

*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*,
  371 F.3d 1291 (11th Cir. 2004)........................................................ 12, 22

*Raymond v. Mobil Oil Corp.*,
  983 F.2d 1528 (10th Cir. 1993)................................................................ 12

*Russello v. United States*,
    464 U.S. 16 (1983) ............................................................. 16

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) .......................................... 11

*Schwartz v. ADP, Inc.*,
    2021 WL 3172029 (M.D. Fla., July 26, 2021) ............................. 12, 13

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) ............................................ 7

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) .......................................... 7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................... 7

*Stalley v. Orlando Reg. Healthcare Sys.*,
    524 F.3d 1229 (11th Cir. 2008) .......................................... 6

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ............................................ 11

*United Surgical Assistants, LLC v. Aetna Life Ins. Co.*,
    2014 WL 1268659 (M.D. Fla. Mar. 27, 2014) ..................... 10

*Vazquez v. Marriott Int'l, Inc.*,
    2017 WL 6947455 (M.D. Fla. Aug. 25, 2017) .................... 11

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................... 6

*Whipple v. Safetouch, Inc.*,
    2018 WL 1902887 (M.D. Fla. Jan. 31, 2018) .................... 22

*Wilczynski v Lumbermens Mut. Cas. Co.*,
    93 F.3d 397 (7th Cir. 1996) ............................................... 17

*Williamson v. Travelport, LP*,
    953 F.3d 1278 (11th Cir. 2020) ................................. 2, 16, 17

*Worldwide Aircraft Servs., Inc. v. Anthem Ins. Cos., Inc.*,
    2022 WL 797471 (M.D. Fla. Mar. 16, 2022) ..................... 22

**Statutes**

29 U.S.C. § 1002 / ERISA section 3 ................................................................. 12, 22

29 U.S.C. § 1059 / ERISA section 209 .................................................................. 17

29 U.S.C. § 1132 / ERISA section 502 ............................................................ *passim*

29 U.S.C. § 1162 / ERISA section 602 ......................................................... 13, 18, 23

29 U.S.C. § 1163 / ERISA section 603 ............................................................. 10, 23

29 U.S.C. § 1166 / ERISA section 606 ........................................................... 4, 14, 17

**Regulations**

29 C.F.R. § 2560.503-1 ......................................................................................... 17

29 C.F.R. § 2590.606-4 .................................................................................. *passim*

## INTRODUCTION

Plaintiffs Susan Bacs and Jessica Roubert (together, "Plaintiffs") bring their First Amended Complaint ("Complaint") in a vain attempt to keep their claims afloat by jettisoning major parts of their prior complaint. The new complaint abandons the theory that an intangible "informational" injury supports Article III standing; abandons the claim that Defendant's COBRA notice ("Notice") must identify the "Plan Administrator"; and abandons all claims by alleged beneficiary and former plaintiff Aron Bacs. But getting rid of these parts of the prior complaint does nothing to shore up Plaintiffs' remaining theory.

The Complaint now boils down to a single assertion: even though the Notice Plaintiffs received stated when COBRA coverage would start (if elected) and how long it would last in different circumstances, the Notice violated Department of Labor regulations because it did not identify the *specific date(s)* that coverage might end. For the reasons explained below, Plaintiffs' Complaint fails as a matter of law.

First, as a threshold matter, Plaintiffs lack Article III constitutional standing for their claims. Plaintiffs allege that, after declining Defendant's offer of COBRA coverage, they had to pay medical costs and other expenses. But Article III standing requires Plaintiffs to establish a causal connection between the alleged wrongdoing and the resulting injuries. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs knew (because the Notice told them) the precise date that COBRA coverage would start (if elected) and that coverage generally would last 18 months, subject to several exceptions set forth in the statute. Under these circumstances,

Plaintiffs fail to plausibly allege that the single missing end date, i.e., whether coverage would end on the first of the month, the middle of the month, or the end of the month, *caused them* to decline COBRA coverage in the first place. Plaintiffs thus lack Article III standing for their claims.

Second, Plaintiffs separately lack statutory standing under ERISA to press their claims. ERISA authorizes only "participants" to bring actions. *See* 29 U.S.C. § 1132(a).[1] The prior complaint and the Complaint were both filed more than *three years* after Plaintiffs received their Notice and more than *18 months* after any COBRA coverage they could have elected would have ended. Plaintiffs are thus not "participants" under ERISA and have no statutory standing to press claims under ERISA.

Third, Plaintiffs' claim for statutory penalties fails because ERISA's penalty statute, 29 U.S.C. § 1132(c)(1), must be "strictly and narrowly construed" and only authorizes penalties for violations of specific *statutory* provisions, not Department of Labor *regulations* like those Plaintiffs allege were violated here. *See Williamson v. Travelport, LP*, 953 F.3d 1278, 1296 (11th Cir. 2020).

Fourth, the Notice sent to Plaintiffs satisfies every legal requirement in the regulations in any event. The Notice provides an "*explanation of* the continuation coverage termination date" (as required by 29 C.F.R. § 2590.606-4(b)(4)(viii))

---

[1] ERISA also allows "fiduciaries" and "beneficiaries" to bring certain claims, but Plaintiffs do not allege that they were fiduciaries or beneficiaries and do not invoke those provisions.

(emphasis added), including when Plaintiffs' COBRA coverage would begin and how long it would last in the different circumstances laid out by the statute, as required.  Plaintiffs' argument that the regulation requires more is based on a misreading of the regulation upon which they rely.

Lastly, Plaintiffs include in their Complaint a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  This provision allows participants to recover benefits due under the terms of a plan, but requires a plaintiff bringing such a claim to allege the plan terms that entitle them to the benefits and the specific benefits to which they claim an entitlement.  Here, however, Plaintiffs do not allege any *facts* about what medical benefits they believe they are entitled to under the Capital One health plan or what plan terms entitle them to those benefits.

For these reasons, and the reasons stated below, Defendant respectfully requests the Court dismiss Plaintiffs' Complaint with prejudice.

## FACTUAL ALLEGATIONS

Plaintiffs Susan Bacs and Jessica Roubert are former employees of Capital One Financial Corporation ("Capital One" or "Defendant") who participated in the Capital One health plan (the "Plan") until their terminations on November 26 and October 28, 2018, respectively.  ECF No. 30 ("FAC") ¶¶ 26, 29.  Shortly after each termination, Defendant mailed each Plaintiff a Notice, informing them that they were entitled to continue their Plan coverage under COBRA.  FAC ¶¶ 28, 30.  Each

Plaintiff received a Notice, attached to this motion as Exhibits A and B,[2] which provided Plaintiffs with individualized explanatory information about their specific COBRA coverage.  Among other things, the Notice explained the deadline to make a decision and when COBRA coverage would start (Notice at 1); how much coverage would cost (*id.* at 4); how long coverage would last and when it would end under different circumstances (*id.* at 7); how to sign up for coverage (by either mailing in a paper form or going online) (*id.* at 3, 6-7); how to pay and when payment was due (*id.* at 9-10); and how to contact the Plan's COBRA administrator, Anthem Blue Cross Blue Shield ("Anthem"), with questions (*id.* at 2, 13).  Neither Plaintiff chose to elect coverage.  FAC ¶ 36.

## PLAINTIFFS' CLAIMS

More than three years after receiving the Notice, Plaintiffs bring the present action.  Plaintiffs do not allege that the Notice fails to meet the requirements of the COBRA *statute*, 29 U.S.C. § 1166.  *See* FAC ¶¶ 44-56 (describing alleged violations).  Instead, Plaintiffs claim that the Notice did not comply with the Department of Labor's *regulations* at 29 C.F.R. § 2590.606-4(b)(4) because it identified the start date of coverage and the duration of coverage but failed to include the specific termination

---

[2] The Court may take judicial notice of the COBRA Notice provided to Plaintiffs, as it is integral to the Complaint.  "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal[.]" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  If there is a conflict between the complaint and the supporting documents, the information contained in the supporting documents controls.  *See, e.g., Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

date for coverage.  *Id.* ¶¶ 44-52.  Plaintiffs also allege that because it omitted the termination date, the Notice was not written "in a manner calculated to be understood by the average participant," as required by the regulations.  *Id.* ¶¶ 53-56. Plaintiffs allege that they "did not elect COBRA continuation coverage" and that they incurred medical-related expenses.  FAC ¶¶ 35-36, 38, 41.  Notably, Plaintiffs do *not* allege that they made any attempt to contact Anthem or Capital One to ask about COBRA coverage or the allegedly missing information.  They do not allege that the Notice failed to explain what COBRA was, how to enroll in coverage, who to contact with questions, or how long coverage would last (generally 18 months, as the Notice explains).  Nor do Plaintiffs state how this single purported "defect" about the precise date that COBRA coverage would end (18 months into the future) caused them to decline COBRA coverage that they would have otherwise elected in the first instance. That is, Plaintiffs do not allege that they would have elected COBRA coverage in late 2018 or early 2019 if the Notice had included a specific end date for COBRA coverage in May or June 2020.  Nonetheless, they now seek monetary penalties under 29 U.S.C. § 1132(c)(1) of up to $110 for each day that they did not receive a fully satisfactory COBRA Notice.

**ARGUMENT**

## I.   LEGAL STANDARD

### A.   Rule 12(b)(1)

When evaluating a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1), the court must assess whether the plaintiff has alleged a sufficient

5

basis for subject matter jurisdiction, including Article III constitutional standing. *Stalley v. Orlando Reg. Healthcare Sys.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008); *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). The party claiming federal jurisdiction must "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

If the Court believes that jurisdictional discovery will aid the Court's evaluation of its subject matter jurisdiction, the Court can order such limited discovery to help its consideration of a Rule 12(b)(1) motion. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982) ("[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."); *Infant Swimming Rsch., Inc. v. Faegre & Benson*, LLP, 335 F. App'x 707, 713 (10th Cir. 2009) ("If [] the defendant files a motion to dismiss for lack of jurisdiction, thus putting the plaintiff's Article III standing in issue, a district court may conduct limited discovery on the jurisdictional issue and resolve the matter on motion supported by affidavits, or, if a genuine issue of material fact exists, may conduct an evidentiary hearing.").

### B.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A plaintiff need not plead 'detailed factual allegations,' but he must demonstrate 'more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  While the Court must accept Plaintiffs' well-pleaded facts as true, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (citations omitted).

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE CONSTITUTIONAL AND STATUTORY STANDING.

### A.   Plaintiffs Lack Article III Standing Because They Fail to Plead a Causal Connection Between the Specific COBRA End Date Information and Their Decision Not to Elect COBRA Coverage.

At the threshold, Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of constitutional standing.  In order to vest this Court with subject matter jurisdiction, Plaintiffs "must 'clearly . . . allege facts demonstrating'" that they have Article III standing to assert their claims.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  As the party invoking federal jurisdiction, Plaintiffs have the burden of establishing three necessary and independent elements: that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

Plaintiffs assert that they did not elect COBRA coverage and incurred medical expenses and other costs.  FAC ¶¶ 36-41.  But these injuries run afoul of the second required element of constitutional standing—demonstrating a *causal connection*

between the alleged wrongdoing and the claimed injury.  An individual can decide whether to elect or decline COBRA coverage for many reasons, including her own specific financial, family, health, and employment circumstances; the alternatives available to her; and her personal cost-benefit analysis.  But "[t]he causation element of Article III standing requires 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant.'"  *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560).  Although the "traceability" of a plaintiff's harm to the defendant's conduct need not rise to the level of proximate causation, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014), Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact," *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (citations omitted).  In other words, to satisfy the causation requirement of Article III, a plaintiff needs to allege that there is a "*substantial likelihood*" that the specific information missing from the COBRA notice *caused* her to decline coverage and therefore incur other medical expenses.

Courts have dismissed similar COBRA notice claims for failing to sufficiently allege a causal connection.  In *Carter v. Southwest Airlines*, for example, the plaintiff alleged similar claims for an allegedly defective COBRA notice.  2020 WL 7334504, at *5-7 (M.D. Fla. Dec. 14, 2020) (Jung, J.).  To support Article III standing, the plaintiff alleged that she suffered an injury in fact because she lost insurance coverage and incurred medical expenses after she declined COBRA coverage.  *Id.* at *2.

Applying the causation requirement of Article III, Judge Jung concluded that the plaintiff lacked Article III standing because she did not allege that the allegedly missing information actually caused her to decline COBRA coverage and incur the subsequent medical expenses. *Id.* at *5-7 (complaint failed to explain why the failure to include specific information "harmed her or how it interfered with her ability to elect COBRA coverage").  Likewise, in *Bryant v. Wal-Mart Stores, Inc.*, Magistrate Judge Goodman found no evidence of "any causal connection between the alleged COBRA notice deficiency and any harm (economic or 'informational') that they claim to have suffered."  2020 WL 4333452, at *17-18 (S.D. Fla. July 15, 2020) (magistrate's report and recommendation addressing standing in the context of plaintiffs' motion for class certification);[3] *see also Green v. FCA U.S. LLC*, 2021 WL 1750118, at *4 (E.D. Mich. May 4, 2021) (plaintiffs lacked Article III standing to pursue COBRA claims where plaintiffs failed to allege how or why they were harmed by the notice's failure to identify the "Plan Administrator").

Here, too, Plaintiffs allege "loss of health insurance coverage," "medical-related expenses," and the "purchase of more expensive health insurance coverage." FAC ¶¶ 37-41.  But as in *Carter* and *Bryant*, Plaintiffs do not allege how these asserted injuries were caused by the COBRA Notice not including a specific end date for coverage.  For example, Plaintiffs lost their health insurance coverage not because of

---

[3] The district court in *Bryant* did not address the magistrate's report and recommendation because the parties filed a joint stipulation voluntarily dismissing all claims.  *See Bryant v. Wal-Mart Stores, Inc.*, No. 1:16-cv-24818-JEM (S.D. Fla. July 20, 2020), ECF No. 186.

the COBRA notice but because their employment ended.  Indeed, Plaintiffs only received a COBRA notice *after* their employment terminated, which is the event that caused them to lose medical coverage, as explained in the Notice itself.  *See* 29 U.S.C. § 1163 (defining "qualifying event" as termination that results in a loss of coverage); Notice at 1 ("You are receiving this notice because your coverage under the Plan will end as of 11/30/2018 due to the qualifying event designated above"; "Qualifying Event Reason: Termination").  Thus, any purported defect in the COBRA Notice did not cause Plaintiffs to lose coverage.

Moreover, the Notice states on its first page the date COBRA coverage would start and that it would "generally last for up to 18 months." *See id.* at 1, 7.  Under these circumstances, Plaintiffs provide no plausible allegation as to how the lack of a specific termination date made any difference to their decision about electing COBRA coverage initially.  That is, Plaintiffs do not allege that they would have elected COBRA coverage in late 2018 or early 2019 had they known the precise date their coverage would end 18 months into the future.  Accordingly, Plaintiffs lack Article III standing.[4]  *See Carter*, 2020 WL 7334504, at *5 (no Article III standing

---

[4] To the extent Plaintiffs' Article III standing is unclear and because this case is brought as a putative class action, Defendant respectfully request that the Court order jurisdictional discovery limited to whether Plaintiffs have Article III standing and allow supplemental briefing on standing once that jurisdictional discovery is complete.  *See Eaton*, 692 F.2d at 729 ("[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."); *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 2014 WL 1268659, at *1-2 (M.D. Fla. Mar. 27, 2014) (finding "[t]he court has discretion to determine whether to allow jurisdictional discovery when the court's subject matter jurisdiction is in dispute" and ordering limited jurisdictional discovery "to resolve the issue at this early stage in litigation"); *Infant Swimming Rsch., Inc.*, 335 F.

because plaintiff failed to explain why the failure to include the specified information "harmed her or how it interfered with her ability to elect COBRA coverage"); *id.* at *7 (no Article III standing where plaintiff "fails to explain how these alleged deficiencies led to her inability to understand the Notices in a way that impeded her decision to elect or not elect COBRA coverage").[5]

### B. Plaintiffs Lack Statutory Standing Under ERISA Because They Do Not Plausibly Allege Facts That They Are "Participants" as Defined by ERISA.

Plaintiffs' claims also are subject to dismissal pursuant to Rule 12(b)(6), because they do not plausibly allege *statutory* standing under ERISA.  Separate from the requirements of Article III, a plaintiff must be a "participant or beneficiary" at the time the suit is filed in order to maintain an ERISA cause of action under 29

---

App'x at 713 ("If [] the defendant files a motion to dismiss for lack of jurisdiction, thus putting the plaintiff's Article III standing in issue, a district court may conduct limited discovery on the jurisdictional issue and resolve the matter on motion supported by affidavits, or, if a genuine issue of material fact exists, may conduct an evidentiary hearing."); *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006) (noting "in any case requiring determination of Article III standing," the court may conduct jurisdictional discovery and hold a jurisdictional hearing).

[5] During the Rule 16 conference in this matter, Plaintiffs claimed that they have Article III standing based on Judge Scriven's decision in *Vazquez v. Marriott Int'l, Inc.*, 2017 WL 6947455, at *2 (M.D. Fla. Aug. 25, 2017).  But *Marriot* did not consider whether the plaintiff satisfied the *causation* requirement of Article III—merely the separate "injury in fact" requirement.  Moreover, *Marriot* was issued before several recent Eleventh Circuit decisions imposing more strict Article III requirements.  *See, e.g., Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) (finding no standing for statutory violations because plaintiffs did not allege a "concrete harm" or "real injury"); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 929-34 (11th Cir. 2020) (en banc) (finding a "bare procedural violation" of a statute "divorced from any concrete harm" did not provide Article III injury); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020) (rejecting "informational injury" without actual harm as a basis for Article III standing).

U.S.C. § 1132(a)(1).  *See* 29 U.S.C. § 1132(a)(1) (authorizing a "participant or beneficiary" to bring a claim); *see also Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293-94 (11th Cir. 2004); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1533-35 (10th Cir. 1993).  ERISA, in turn, defines "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan."  29 U.S.C. § 1002(7); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (elaborating that "former employees" include those with "a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits").  Such statutory standing is determined as of the time the lawsuit is filed.  *Raymond*, 983 F.2d at 1535.

Based on the specific definitions in the statute for a "participant," courts have held that ERISA does not provide a cause of action to former employees who are not in the plan or otherwise eligible for plan benefits at the time the complaint is filed.  *See, e.g.*, *Schwartz v. ADP, Inc.*, 2021 WL 3172029, at *4-5 (M.D. Fla., July 26, 2021); *Raymond*, 983 F.2d at 1533-35.  In *Schwartz*, for example, the court dismissed COBRA notice claims brought by a former employee who filed the complaint long after the 18-month COBRA coverage period had lapsed.  2021 WL 3172029, at *5.  The court reasoned that, because the plaintiff had no possible entitlement to plan benefits even under COBRA, he lacked standing to bring his COBRA notice claims under ERISA.  *Id.* at *5 (citing 29 U.S.C. § 1162(2)(A)).  The court further explained that, without this showing, the plaintiff "must identify a colorable claim to some

other current or future vested benefit." *Id.*  As the plaintiff failed to plead either, the court dismissed his COBRA notice claims.  *Id.*

That analysis applies here.  Plaintiffs Bacs and Roubert, like the plaintiff in *Schwartz*, filed the suit more than 18 months after they received the COBRA Notice. Just like in *Schwartz*, had Plaintiffs elected COBRA coverage, the 18-month COBRA period would have ended by June 2020—more than *18 months* before Plaintiffs filed the original complaint on December 7, 2021.[6]  *See* Notice at 1.  Simply put, there is no circumstance in which either Bacs or Roubert had a colorable claim to any Plan benefits—under COBRA or otherwise—when the Complaint was filed.  They were not "participants" under ERISA at the time of the lawsuit, and therefore lack statutory standing for their claims.[7]

## III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

Even if they had standing to press them, Plaintiffs' claims fail as a matter of law.  Plaintiffs characterize their claims as four Counts:

---

[6] Even if Plaintiffs were permitted to extend COBRA coverage to the maximum 36-month period allowed by 29 U.S.C. § 1162, coverage still would have ended before the date of the Complaint here.

[7] The Complaint makes the purely conclusory statement that Plaintiffs "have colorable claims to vested benefits in the Plan," but alleges no facts in support of that conclusory statement.  FAC ¶ 33.  To the contrary, Plaintiffs themselves allege they lost any right to Plan benefits upon their termination in 2018.  *See id.* ¶ 37 ("Both Plaintiffs suffered . . . the loss of health insurance coverage" upon termination); *id.* ¶ 41 (Ms. Roubert "lost her insurance" under the Plan in 2018); *id.* ¶ 49 ("Plaintiffs lost COBRA coverage" after termination in 2018).  *See also infra* at 21-24 (explaining that Plaintiffs do not plausibly allege a claim for Plan benefits).

Count I:    "Violation of 29 U.S.C. § 1166 for failure to comply with Secretary's Regulations";

Count II:   "Violation of 29 U.S.C. § 1132(c)(1) and ERISA § 502(c)";

Count III:  "Relief Sought Pursuant To 29 U.S.C. § 1132(a)(1)(A)"; and

Count IV:   "Relief Sought Pursuant To 29 U.S.C. § 1132(a)(1)(B)."

Counts I-III, however, are *the same claim*.  That is, 29 U.S.C. § 1166, the basis for "Count I," is the substantive COBRA notice provision that describes the obligation to provide a COBRA notice under certain circumstances.  29 U.S.C. § 1166.  That provision, however, does not include its own enforcement provision or authorize any causes of action.  Rather, 29 U.S.C. § 1132(c), cited in "Count II," authorizes district courts to impose a penalty against an administrator who does not meet the statutory requirements of certain parts of 29 U.S.C. § 1166.  But, again, that provision does not identify who can sue for those penalties or under what circumstances.  By contrast, 29 U.S.C. § 1132(a)(1)(A), cited in Count III, *is* part of ERISA's enforcement provision.  It is the statutory provision (and the only one) that authorizes a participant or beneficiary to sue "for the relief provided for in subsection (c) of this section," i.e., to sue for penalties under 29 U.S.C. § 1132(c).  Thus, Counts I-III are really one cause of action brought pursuant to 29 U.S.C. § 1132(a)(1)(A) for penalties under 29 U.S.C. § 1132(c).  *See LaBrache v. Am. Mar. Officers Pension Plan*, 45 F. Supp. 2d 1335, 1340 (M.D. Fla. 1999) ("In cases alleging reporting and disclosure violations, a plaintiff must bring action under § 1132(a)(1)(A) for the relief provided in § 1132(c)."); *Kircher v. Cont'l Cas. Co.*, 2007 WL 1192450, at *7 (M.D. Fla. Apr. 23,

14

2007) ("A portion of ERISA provides that 'A civil action may be brought-(1) by a . . . beneficiary-(A) for the relief provided for in subsection (c) of this section, . . . 29 U.S.C. § 1132(a)(1)(A).  Subsection (c) in turn provides that any administrator who fails or refuses to comply with a request for any required information within thirty days may be personally liable for up to $100 a day or such other relief as the court deems proper.").

These claims in Counts I-III all fail as a matter of law because (a) ERISA does not authorize a claim for penalties for alleged violations of Department of Labor *regulations*; and (b) even if it did so, the Notice satisfies the applicable regulatory requirements as a matter of law.

Plaintiffs' separate claim for benefits under 29 U.S.C. § 1132(a)(1)(B) in Count IV fails because Plaintiffs do not allege any facts about any medical benefit to which they are entitled under the Plan's terms or even identify the Plan terms that entitle them to that benefit.  In fact, Plaintiffs do not even allege facts that they were "participants" in the Plan under ERISA because they specifically allege that they lost their medical coverage when their employment terminated and that they did not elect COBRA.  *See* FAC ¶¶ 37, 41, 49.  As such, their claim for Plan benefits under 29 U.S.C. § 1132(a)(1)(B) fails as a matter of law.

Each of these issues is discussed in further detail below.

**A.    Plaintiffs' Claims for Statutory Penalties in Counts I-III Fail as a Matter of Law Because ERISA Authorizes Penalties Only for Violations of Statutory Requirements, Not Regulations.**

Plaintiffs' claims for penalties in Counts I-III fail as a matter of law because ERISA authorizes penalties only for statutory violations, not violations of *regulations* promulgated under a statute.

By its terms, 29 U.S.C. § 1132(c)(1) only authorizes the imposition of penalties for violations of specific *statutory* provisions—not regulations promulgated under those statutes.  *See* 29 U.S.C. § 1132(c)(1) (listing specific statutes and "this subchapter" but not "regulations").  By contrast, other parts of ERISA's enforcement provisions explicitly allow an assessment of penalties for violation of "regulations." *See, e.g.*, 29 U.S.C. § 1132(c)(5) (authorizing a penalty to be assessed for the "failure or refusal to file the information required to be filed by such person with the Secretary *under regulations*" (emphasis added)).  That deliberate choice by Congress must be respected.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (same).

That principle is particularly true here.  The Eleventh Circuit has held that 29 U.S.C. § 1132(c) is a "penal" provision and therefore "must be strictly and narrowly construed."  *Williamson*, 953 F.3d at 1293.  For these reasons, penalties under 29 U.S.C. § 1132(c)(1) apply only to violations of *the statute* and not to violations of

*regulations* promulgated under the statute. *Id.* at 1296 ("[Section] 1132(c) penalizes violations 'under this subchapter,' and *not violations of federal regulations*" (emphasis added) (citing *Groves v. Modified Ret. Plan*, 803 F.2d 109, 116 (3d Cir. 1986) ("Because § 502(c) authorizes penalties only for breach of duties under 'this subchapter' [of the statute], such sanctions cannot be imposed for violation of an agency regulation.'))); *see also Wilczynski v Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406-07 (7th Cir. 1996) (following *Groves* to conclude that "section 1132(c) does not apply to violations of [the regulation, namely] 29 C.F.R. § 2560.503-1(g)").

Here, as in *Williamson*, *Groves*, and *Wilczynski*, Plaintiffs do not allege any violation of the statute itself.  Instead, Plaintiffs allege only violations of the Department of Labor's regulations at 29 C.F.R. § 2590.606-4(b)(4).[8]  The statute does not authorize penalties for violations of those regulations.  Accordingly, as a matter of law, Plaintiffs fail to state a claim for penalties and Counts I-III fail as a matter of law.

---

[8] The Complaint notes that 29 U.S.C. § 1166(a) requires conduct "in accordance with the regulations prescribed by the Secretary [of Labor]" under the statute. *See* FAC ¶ 2.  Nearly every statute contains such reference to relevant regulations, but that does not elevate the regulations promulgated under the statute into a statutory provision.  This is clear from *Williamson* itself.  There, the Eleventh Circuit directly held that the plaintiff could not receive § 1132(c) penalties for alleged violation of the regulations promulgated in relation to 29 U.S.C. § 1059(a). *See* 953 F.3d at 1296.  Yet § 1059(a)—just like § 1166(a)—contains the same language that conduct under the statute must be "in accordance with such regulations as the Secretary may prescribe."  29 U.S.C. § 1059(a)(1).  The Eleventh Circuit's decision in *Williamson* controls here for the same reason.

**B.**   **Plaintiffs' Claims for Statutory Penalties in Counts I-III Fail as a Matter of Law Because the Notice Satisfies the Department of Labor Regulations.**

In any event, contrary to Plaintiffs' allegations, the Notice complies with the applicable Department of Labor regulations.

In the Complaint, Plaintiffs allege that although the Notice identified the precise date that COBRA coverage would start and the duration of COBRA coverage under various circumstances, the Notice violated the regulations because it did not identify the precise date COBRA coverage would end.  Plaintiffs are wrong.

**1.**   **The Notice Satisfies the Regulations Because It Describes How Long COBRA Coverage Will Last and the Circumstances That Impact the Duration of COBRA Coverage.**

Plaintiffs claim that the Notice violates 29 C.F.R. § 2590.606-4(b)(4)(viii) because it did not identify the "specific date" on which COBRA coverage would end. FAC ¶ 47.  But Plaintiffs are inventing a requirement not in the regulation.  The regulation requires "[a]n explanation of the maximum period for which continuation coverage will be available under the plan; an explanation of the termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period."  29 C.F.R. § 2590.606-4(b)(4)(viii).

The reason this provision requires an "*explanation* of the termination date"— rather than simply "the termination date" itself—is that there is no single "termination date" under the statute.  Rather, COBRA sets forth a number of distinct events that can, in turn, set different termination dates, as well as extend or shorten termination dates based on subsequent events.  Specifically, 29 U.S.C. § 1162(2) sets

forth several *different* possible durations for COBRA continuation coverage, including (a) an 18-month period when a covered employee is terminated, *see* § 1162(2)(A)(i); (b) a 36-month period if a second qualifying event occurs during the initial 18-month period, *see* § 1162(2)(A)(ii); (c) a 36-month period in the event the covered employee dies, divorces his/her spouse, or a dependent child ceases to be a dependent under the plan, *see* § 1162(2)(A)(iv); and (d) the initial 18-month period will be converted into a 29-month period if a qualified beneficiary is determined to be "disabled" under the Social Security Act, *see* § 1162(2)(A)(viii).  Further, any of these "maximum coverage periods" may be terminated *earlier* in specific circumstances, such as when an employer ceases to provide a group health plan to its employees generally, *see* § 1162(2)(B), or if the qualified beneficiary fails to make timely COBRA payments, *see* § 1162(2)(C).  Accordingly, under the statute itself, there is no single "termination date" to include in the Notice.

It therefore makes sense that the plain language of 29 C.F.R. § 2590.606-4(b)(4)(viii) does not require the notice to include a specific "termination date."  It requires the COBRA notice to provide, instead, "*an explanation* of the termination date"—that is, an explanation of when COBRA coverage may terminate under the different circumstances set forth in the statute.  The Notice does exactly that.

First, the COBRA Notice explains the date that COBRA coverage would start if elected.  *See* Notice at 1 ("Coverage Start Date if Electing").  Second, it includes a section titled "Duration of COBRA Coverage," which explains, in detail, the specific

19

factors affecting how long an individual's COBRA coverage may last.  *See* Notice at

7.  Among other things, the Notice explains that (a) coverage following an employee's

termination will "generally last for up to 18 months," *see id.*; (b) coverage "can last up

to 36 months after the date of Medicare entitlement" if the terminated employee

becomes eligible for Medicare benefits within 18 months of the qualifying event, *see*

*id.*; and (c) coverage may last for up to 36 months if the loss of coverage occurs "due

to the death of the employee, the covered employee's divorce or legal separation, the

covered employee's becoming enrolled in Medicare benefits (under Part A, Part B, or

both), or a covered child losing eligibility as a child under the terms of the Plan," *see*

*id.*

Third, the Notice separately describes the different circumstances set forth in

§ 1162(2)(B) & (C) in which coverage might be terminated earlier.  *See* Notice at 7

(identifying five circumstances in which "[t]he law provides that COBRA coverage

may be *terminated* prior to the end of the maximum periods") (emphasis added).  And,

further, the Notice describes, in a section entitled "Extending the Duration of

COBRA Coverage," additional circumstances in which COBRA coverage might be

extended beyond the initial coverage period, for instance, for an additional 18 months

if the beneficiary becomes disabled or experiences a second qualifying event, such as a

termination.  *See id.* at 8.

In short, given the many factors that might affect the termination date of

COBRA coverage, it would be impossible for any Notice to identify a single "specific

date" when coverage would necessarily end.  Providing such a single end date would

be misleading because there would always be circumstances in which COBRA coverage could end earlier or later.  The regulation acknowledges this fact by requiring the Notice to include "an *explanation* of the termination date" under the different circumstances set forth by COBRA.[9]  The Notice includes that information and fully satisfies the regulation.[10]

### C.    Plaintiffs' Claim for Plan Benefits in Count IV Fails as a Matter of Law Because Plaintiffs Do Not Identify the Benefits to Which They Are Entitled or the Plan Terms That Entitle Them to Those Benefits.

In Count IV, Plaintiffs assert a claim under 29 U.S.C. § 1132(a)(1)(B), which allows a participant or beneficiary to file suit "to recover benefits due to him *under the terms of his plan . . . .*"  FAC ¶ 95 (emphasis added).  This claim fails as a matter of law for several reasons.

First, Plaintiffs do not identify any Plan terms that they claim were violated or that entitle them to certain benefits.  As the Supreme Court has explained many times, "we have recognized the *particular importance* of enforcing plan terms as written

---

[9] Plaintiffs would, in effect, render the words "an explanation" superfluous and construe the regulation as requiring only "the termination date."  This violates the basic principle of statutory interpretation that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

[10] Plaintiffs also allege that the Notice is not "written in a manner calculated to be understood by the average plan participant."  FAC ¶ 49 (citing § 2590.606-4(b)(4)).  But that is just a rehash of their allegations about the COBRA coverage termination date.  Plaintiffs do not identify anything misleading, inaccurate, or confusing about the Notice, or even any other information that the Notice should have included but did not.

in § 502(a)(1)(B) claims."[11]  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (collecting cases; emphasis added).  As such, and because of the specific nature of § 1132(a)(1)(B), a plaintiff must identify the specific plan terms that they claim entitle them to benefits in order to state a claim.  *See, e.g., Worldwide Aircraft Servs., Inc. v. Anthem Ins. Cos., Inc.*, 2022 WL 797471, at *6 (M.D. Fla. Mar. 16, 2022) (dismissing plaintiffs' claims for benefits under § 1132(a)(1)(B) because plaintiffs "fail[ed] to identify a specific Plan provision under which benefits are claimed" and "a plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question"); *Whipple v. Safetouch, Inc.*, 2018 WL 1902887, at *5 (M.D. Fla. Jan. 31, 2018), report and recommendation adopted, 2018 WL 1902892 (M.D. Fla. Mar. 1, 2018) (dismissing plaintiffs' claim for benefits, finding "Plaintiff's Amended Complaint fails to pass muster because it does not identify a specific plan term that conferred a benefit").  Yet, here, Plaintiffs do not identify *any* Plan terms that entitle them to any benefits or that they claim have been violated.

Second, Plaintiffs do not allege the benefits they seek and how those qualify as benefits to which they are entitled "*under the terms of [the] Plan*."  29 U.S.C. § 1132(a)(1)(B) (emphasis added).  Not all medical-related expenses are covered under a medical benefit plan.  That is because "[e]mployers have large leeway to design disability and other welfare plans as they see fit."  *Black & Decker Disability Plan v.*

---

[11] Section "502(a)(1)(B)" of ERISA is a reference to the statutory cite 29 U.S.C. § 1132(a)(1)(B).

*Nord*, 538 U.S. 822, 833 (2003).[12]  Yet Plaintiffs do not allege that they incurred any

medical expenses *that were covered under the Plan's terms*.  *See Coles v. Bert Bell/Pete*

*Rozelle NFL Player Ret. Plan*, 2014 WL 12617587, at *2 (M.D. Fla. June 18, 2014),

report and recommendation adopted, 2014 WL 12617586 (M.D. Fla. July 15, 2014)

(dismissing plaintiffs' claim for benefits for failing to provide "the court with enough

factual information to determine whether [the benefits sought] were indeed

covered . . . under the plan") (internal quotations and citations omitted).  Merely

alleging that a plaintiff incurred medical expenses—without even alleging that those

expenses were covered under the Plan—does not state a claim.  *See id.*

Lastly, Plaintiffs do not even allege facts that they were participants in the Plan

at the time they incurred the medical expenses for which they seek coverage.  To the

contrary, Plaintiffs' COBRA claims are explicitly based on their right to receive notice

following a "qualifying event" under 29 U.S.C. § 1163(2), which requires a "*loss of*

*coverage*" under the Plan.  *See* FAC ¶ 7 ("Plaintiffs . . . experience[d] a qualifying event

within the meaning of 29 U.S.C. § 1163(2)."); 29 U.S.C. § 1162 ("[T]he term

'qualifying event' means . . . any of the following events which . . .  would result in

the loss of coverage of a qualified beneficiary").  That is, Plaintiffs lost coverage,

ceased participating in the Plan, and then did not elect to continue their coverage

under COBRA.  Whatever the merit (or lack of merit) of their claims for COBRA

penalties, Plaintiffs' own allegations demonstrate that they were not participants in

---

[12] Medical benefit plans are welfare plans under ERISA.  29 U.S.C. § 1002(1).

the Plan and therefore cannot sue to recover benefits under *the Plan*.  *See also* 29

U.S.C. § 1132(a)(1)(B) (only authorizing a "participant" or "beneficiary" to sue for

benefits under § 1132(a)(1)(B)); *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292,

1295 (11th Cir. 2001) ("Only 'participants or beneficiaries' of a plan are authorized to

file lawsuits seeking benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B).")

## **CONCLUSION**

For the above reasons, Defendant respectfully requests that the Court dismiss

Plaintiffs' claims with prejudice.

Dated: April 15, 2022                              Respectfully submitted,

                                                   **MORGAN, LEWIS & BOCKIUS LLP**

                                                   By: */s/ Jeremy P. Blumenfeld*

Christopher M. Diffee (*pro hac vice*)             Jeremy P. Blumenfeld (*pro hac vice*)
101 Park Avenue                                    Shelby M. Krafka (*pro hac vice*)
New York, NY 10178-0060                            1701 Market Street
Telephone: (212) 309-6000                          Philadelphia, PA 19103-2921
Fax: (212) 309-6001                                Telephone: (215) 963-5000
christopher.diffee@morganlewis.com                 Fax: (215) 963-5001
                                                   jeremy.blumenfeld@morganlewis.com
Franco Bacigalupo (Fl. Bar No. 0119055)            shelby.krafka@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075                               *Counsel for Defendant*
Telephone: (305) 415-3304
Fax: (305) 415-3001
franco.bacigalupo@morganlewis.com

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that on April 11-12, 2022, counsel for Capital One conferred via email with Brandon J. Hill of the law firm of Wenzel Fenton Cabassa, P.A., one of the attorneys representing Plaintiffs, who advised that Plaintiffs oppose this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2022, I electronically filed the foregoing document through the electronic filing system, which in turn will serve it via electronic mail on all counsel of record.

Brandon J. Hill, Esq.
Florida Bar Number: 37061
Direct No.: 813-337-7992

Luis A. Cabassa, Esq.
Florida Bar Number: 053643
Direct No.: 813-379-2565

WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

*Attorneys for Plaintiffs*

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld