## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISON

**SUSAN BACS and**
**JESSICA ROUBERT,**

      **Plaintiffs,**

**v.**                                    **CASE NO.: 8:21-cv-2852-TPB-TGW**

**CAPITAL ONE FINANCIAL**
**CORPORATION,**

      **Defendant.**
_____/

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Pursuant to Fed.R.Civ.P. 23, Named Plaintiffs, Jessica Roubert and Susan

Bacs, respectfully move this Honorable Court to certify this case as a class action

for the following class of similarly-situated individuals:

> **National COBRA Putative Class:**
>
> **All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the form attached as Exhibit A, during the applicable four-year statute of limitations period, because of a "qualifying event" as determined by Defendant's records, who did not elect continuation coverage.**

### OVERVIEW OF MOTION

The record evidence in this case demonstrates the following: (1) the putative

class is comprised of over 28,763 individuals; (2) each of those individuals received

the same or similarly deficient COBRA notice and then lost insurance; (3) the

Named Plaintiffs and class members have standing; (4) the class members are

identifiable through the records of Defendant's COBRA Administrator, WageWorks; and, finally, (5) as Judge Merryday explained several years ago when analyzing a nearly identical COBRA form in *Valdivieso v. Cushman & Wakefield, Inc.*,[1] Defendant's COBRA notice omits legally required information.  For these reasons, and as explained further below, this case is well-suited for class treatment.

By way of a brief background, Plaintiffs allege that Defendant violated 29 C.F.R. §§ 2590.606-4(b)(4) and (4)(b)(4)(viii) by failing to include in its COBRA notice the specific date that coverage ends if elected.[2]  According to the Court's July 7, 2022, Order denying Defendant's Motion to Dismiss, " 'Although the 18-month language satisfies the requirement that an employer include an 'explanation of the maximum period for which continuation coverage will be available,' the regulation's inclusion of the phrase 'termination date' suggests that the employer must identify the day on which coverage ends.' " (Doc. 52)(citing and quoting *Valdivieso v. Wakefield, Inc.*, No. 8:17-cv-118-T-23JSS, 2017 WL 2191053, at *1 (M.D. Fla. May 18, 2017).  Consequently, the Capital One COBRA notice was not written in a manner calculated to be understood by the average plan participant. As such, the Capital One COBRA notice violates the law.

Plaintiffs respectfully submit that not only have they stated a ***plausible*** claim, Plaintiffs have brought a ***meritorious*** claim.  For this reason, at the

---

[1] No. 8:17-CV-118-T-23JSS, 2017 WL 2191053 (M.D. Fla. May 18, 2017).

[2] In fact, discovery in this case has shown that Capital One now includes the COBRA coverage end date in its COBRA notices. (Miller Depo., p. 29, lines 10-25 through p. 30, lines 1-8; p. 31, lines 1-13).  However, Capital One's decision to later correct its COBRA forms does not resolve the claims of Plaintiffs and those of the putative class members.

appropriate time Plaintiffs will seek summary judgment as to liability, leaving for trial only the issue of statutory damages.

Rule 23(a) and Rule 23(b)(3) are both met. Beginning with class size, the proposed class definition includes thousands of people nationwide [numerosity]. Each putative class member received the same deficient COBRA notice and, as such, has a claim for statutory penalties [commonality]. The Named Plaintiffs' claim also stem from Defendant's same conduct, specifically the deficient COBRA notice [typicality]. Not only that, the Named Plaintiffs are excellent class representatives who retained skilled class action lawyers and lack any conflicts with class members [adequacy]. Additionally, class treatment is warranted here because the resolution of whether Capital One's COBRA Notice complies with the law does not require individualized inquiries. Rather, it is an objective determination central to the resolution of all class members' claims [predominance]. Thousands of potential class members received the deficient Capital One COBRA Notice at issue in this lawsuit. If Plaintiffs prevail it is likely that each individual class member would be entitled to damages under the law. For many class members, the claims will be small in relation to the costs and expenses of litigating the claims, making it unlikely that the claims would be pursued individually. Consequently, the class mechanism is unquestionably superior [superiority].

Any challenge mounted by Defendant as to the content of its deficient COBRA notice would apply uniformly. The same is true for each of Defendant's

core affirmative defenses.  Decisions by the Court on these issues are, therefore, appropriately made to the class members as a whole, as evidenced by certification under Rule 23 of a nearly identical nationwide class in *Vazquez v. Marriott Int'l, Inc.*, No. 817-cv-00116-MSS-MAP, 2018 WL 3860217, at *1 (M.D. Fla. Aug. 7, 2018). Notably, the Eleventh Circuit Court of Appeals rejected the *Vazquez* defendant's petition seeking permission to appeal the *Vazquez* class certification order (see Exhibit B), further demonstrating the propriety of class treatment in this case.

Finally, Plaintiffs' proposed class definition mirrors no less than ten (10) other class action cases certified under Rule 23 by Courts in the Middle District of Florida.  Many of those cases involved the same (or a very similar) WageWorks form to that used by Capital One here.  Those cases include:

1.  *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-00116-MSS-MAP, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018)(Judge Scriven certified nationwide Rule 23 class of 19,000 people in deficient COBRA notice case; notably, the Eleventh Circuit also rejected Marriott's Rule 23(f) petition challenging Article III standing);

2.  *Valdivieso v. Cushman & Wakefield, Inc.*, Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018)(Doc. 92)(Judge Merryday certified nationwide Rule 23 class of 2,000+ people for settlement purposes in deficient COBRA notice case in a case involving a WageWorks COBRA very similar to that used by Capital One);

3.  *Hicks v. Lockheed Martin Corporation*, Case No.: 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019)(Doc. 41)(Judge Moody certified nationwide Rule 23 class of 54,000+ people for settlement purposes in deficient COBRA notice case involving a WageWorks COBRA very similar to that used by Capital One);

4

4. *Silberstein v. Petsmart, Inc.*, 8:19-cv-02800-SCB-AAS (M.D. Fla. Dec. 4, 2020)(Doc. 38) (Judge Bucklew certified nationwide Rule 23 class of 12,000+ people for settlement purposes in deficient COBRA notice case involving a WageWorks COBRA very similar to that used by Capital One);

5. *Rigney et al v. Target Corporation*, Case No.: 8:19-cv-01432-MSS-JSS (M.D. Fla. Nov. 11, 2020) (Judge Scriven certified nationwide Rule 23 class of 92,000+ people for settlement purposes in deficient COBRA notice case);

6. *Morris, et al., v. US Foods, Inc.*, Case No.: 8:20-cv-00105-SDM-CPT (M.D. Fla. Nov. 5, 2021)(Doc. 56)(Judge Merryday certified nationwide Rule 23 class of 19,000+ people for settlement purposes in deficient COBRA notice case);

7. *Taylor v. Citizens Telecom Services Company, LLC*, Case No.: 8:20-cv-00509-CEH-CPT (M.D. Fla. Feb. 8, 2022) (Doc. 65) (Judge Honeywell certified nationwide Rule 23 class of 16,137 people for settlement purposes in deficient COBRA notice case involving a WageWorks COBRA very similar to that used by Capital One);

8. *Kaintz v. The Goodman Group, Inc.*, 8:20-cv-02115-VMC-AAS (M.D. Fla. August 23, 2021) (Doc. 48) (Judge Covington certified nationwide Rule 23 class of 2,889 people for settlement purposes in deficient COBRA notice case appointed as class counsel in deficient COBRA notice case);

9. *McNamara v. Brenntag Mid-South, Inc.*, Case No.: 8:21-cv-00618-MSS-JSS (M.D. Fla. Feb. 17, 2022) (Doc. 32) (Judge Scriven certified nationwide Rule 23 class of 800+ people for settlement purposes in deficient COBRA notice case involving a WageWorks COBRA very similar to that used by Capital One);

10. *Carnegie v. FirstFleet Inc.*, M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019)(Doc. 63) (Judge Jung certified nationwide Rule 23 class of 2,008 people for settlement purposes in deficient COBRA notice case involving a WageWorks COBRA form very similar to that used by Capital One).

In each of these cases—collectively involving over 200,00 class members—v Courts here in the Middle District of Florida found Rule 23(a) and Rule 23(b) satisfied and certified nationwide classes.  Merely that many of the above cases were certified for settlement purposes has no bearing on standing, nor should that alter the Court's analysis here.  Constitutional standing under Article III does not change merely because a case is settled.  Additionally, both Rule 23(a) and Rule 23(b)(3) must both be satisfied for preliminary and final approval of class action settlements. Finally, the *Vazquez* case was certified over the Defendant's objection—it was not certified for settlement purposes until much later.

Based on these facts, coupled with the attached record evidence and authorities cited herein, Plaintiffs respectfully ask this Honorable Court to grant this Motion.

## BRIEF OVERVIEW OF COBRA

In terms of background on COBRA's notice requirements, the Eleventh Circuit has explained that providing notification of COBRA rights is important because employees are not expected to know instinctively of their right to continue their healthcare coverage. *Cummings v. Washington Mut*., 650 F.3d 1386, 1391 (11th Cir. 2011).  Defective or misleading COBRA notices do not comply with the law.  *Scott v. Suncoast Beverage Sales, Ltd*., 295 F.3d 1223 (11th Cir. 2002).

In 2004 the Secretary of Labor promulgated a notice regulation, 29 C.F.R. § 2590.606–4. To facilitate compliance with these notice obligations, the DOL issued a Model COBRA Continuation Coverage Election Notice, included in the

Appendix to 29 C.F.R. § 2590.606-4, that provides a "safe-harbor" if used. *Valdivieso v. Cushman & Wakefield, Inc*., No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at \*2 (M.D. Fla. May 18, 2017). A copy of the DOL's Model Notice is attached hereto as Exhibit C. Employers are not required to use the Model Notice. *See Id*. However, if an employer acting as a plan administrator declines to use the DOL's Model Notice, and the employer also fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, it is subject to statutory monetary penalties. *Id*.

Such is the case here. Defendant declined to use the DOL's Model Notice. Defendant's COBRA notice violates the law. As such, and due to the uniformity of Defendant's actions and the COBRA notice utilized, this case is well-suited for class treatment.

## **SUPPORTING FACTS**

1.      Named Plaintiff Jessica Roubert worked for Capital One for almost eleven years, from November 2007 until October 28, 2018. (*See* Defendant's Answer, Doc. 53, p. 10, ¶ 29); (*see also* Declaration of Jessica Roubert, ¶ 9).

2.      At the time of her separation from employment, both Jessica Roubert and her disabled son were participants in the Capital One Dental Plan. (Roubert, Depo. p. 9, lines 19-22).[4] In addition to the Capital One Dental Plan, Jessica Roubert also participated in the Capital One Health Plan. (*Id*.).

---

[4] Named Plaintiff Jessica Roubert was deposed on August 1, 2022. Thus, only a "rough" version of her deposition transcript is currently available and is attached hereto. Once the final, or "clean" version is made available to the parties, the undersigned will promptly file it with the Court.

3.     Named Plaintiff Susan Bacs worked for Capital One for over six years, from January 2013 until November 26, 2018. (*See* Defendant's Answer, Doc. 53, p. 10, ¶ 26); (*see also* Declaration of Susan Bacs, ¶ 9).  She participated in both the Capital One Health and Dental Plans.  (Declaration of Susan Bacs, ¶ 10).

4.     As a result of losing their jobs at Capital One, the Named Plaintiffs both experienced a "qualifying event" as defined by ERISA, entitling them to notification of their rights under COBRA.  (*See* Composite Exhibit A, copies of the Named Plaintiffs' COBRA notices).

5.     Defendant's COBRA Administrator, WageWorks, then mailed the Named Plaintiffs COBRA notices.    (Declaration of Susan Bacs, ¶¶ 11-13); (Declaration of Jessica Roubert, ¶¶ 13-14). Those notices are deficient as a matter of law.  They are attached as Composite Exhibit A.

6.     Critically for purposes of this Motion, the same or substantially similar COBRA form was used by Capital One from December 7, 2017, through December 2021.  (Miller Depo., p. 29, lines 10-18; and p. 53, lines 9-25 through p. 54, lines 1-9) (*see also* Exhibit D, Defendant's Answers to Interrogatories, Response # 1).

7.     According to Capital One's sworn interrogatory responses and its corporate representative's sworn deposition testimony, the same COBRA form was sent by Capital One to at least 28,763 individuals, all of whom fit the class

---

Finally, Named Plaintiff Susan Bacs will be deposed on August 12, 2022, which is after the deadline to file this Motion.  Thus, her transcript is not made part of this Motion.

definition.[5]   (Miller Depo., p. 29, lines 10-18; and p. 53, lines 3-25 through p. 54, lines 1-9) (*see also* Exhibit D, Defendant's Answers to Interrogatories, Response # 1).

8.     The COBRA notices sent out on behalf of Capital One to the class members are meaningfully identical to the notices sent to Plaintiffs (*see* Exhibit A) because, as the Court noted when denying Defendant's Motion to Dismiss, the notices fail to identify the COBRA coverage end date.  (Miller Depo., p. 38, lines 3-21;  p. 58, line 24 through p. 60, line 2; and p. 74, lines 21-25).

9.     The only differences between among the COBRA notices the class members received were formatting or grammatical changes. (Miller Depo., p. 38, lines 3-21; p. 58, line 24 through p. 60, line 2; and p. 74, lines 21-25).  Minor, non-substantive differences in the COBRA form should not impact class certification.

10.     The information needed to identify the class members is readily ascertainable.  (Miller Depo., p. 54, lines 15-24).  Specifically, Defendant can obtain the last known mailing addresses for every class member.  (Miller Depo., p. 54 line 25 through p. 55, lines 1-4).

11.     Unlike in many class cases, here Defendant has already admitted Plaintiffs' class definition satisfies numerosity under Rule 23(a).  (*See* Exhibit E, Defendant's Responses to Plaintiffs' First Request for Admissions, Responses # 5).

---

[5] The total number of class members may be much higher.  Defendant's corporate representative provided conflicting testimony on the total number of class members, varying between 53,000 and "in the high 20,000s."  (*See* Miller Depo., p. 51, line 7 – p. 53, line 8).  Plaintiffs have relied on the lower, more conservative number of class members provided by Defendant.  Regardless, the number easily exceeds the numerosity threshold required for certification under Rule 23(a).

Not only that, Defendant has the ability to determine which individuals sent the COBRA form did not elect coverage.   (Miller Depo., p. 54, lines 15-24).

12.    Thus, the class is both well-defined and the information relevant to contacting the class members easily ascertainable.

13.    Importantly, the Capital One WageWorks COBRA notice is nearly identical to the WageWorks COBRA form Judge Merryday analyzed in *Valdivieso v. Wakefield, Inc.*, No. 8:17-cv-118-T-23JSS, 2017 WL 2191053 (M.D. Fla. May 18, 2017).  (*See* Miller Depo., p. 60, lines 3-20); (*see* also Doc. 38-1 and Doc. 38-2 for comparison of Capital One COBRA form to COBRA form analyzed by Judge Merryday in *Valdivieso*).

14.    As explained by Defendant's corporate representative and Human Resources Director, Julie Miller, it ultimately was Defendant who is responsible for the content of the COBRA form at issue in this lawsuit. (Miller Depo., p. 26, lines 14-16).

15.    In terms of standing, the Named Plaintiffs and Class Members each have standing by virtue of the deficient COBRA notice form they received coupled with their subsequent loss of insurance.  (Declaration of Jessica Roubert, ¶¶ 12-14); (see also attached Declaration of Susan Bacs, ¶¶ 11-13).

16.    Additionally, Named Plaintiff Jessica Roubert testified that not only did she lose her health insurance coverage (Declaration of Jessica Roubert, ¶ 16), she also lost her established psychiatrist when she later became covered under her husband's employer's health insurance plan. (Roubert, p. 173, lines 8-11).

17.     Plaintiff Jessica Roubert also incurred out-of-pocket expenses for medical related coverage because of Defendant's deficient COBRA notice. (Roubert, p. 91, lines 8-19).  For example, during the months immediately after the end of her employment Roubert paid for prescriptions for herself out of pocket. (Roubert, p. 91, lines 8-19).

18.     Ultimately, she lost her health insurance as a result of Defendant's COBRA notice and suffered economic damages in the form of out of pocket medical expenses as a result. (Roubert, p. 91, lines 8-16).

19.     Likewise, as indicated in her attached sworn declaration, Named Plaintiff Susan Bacs encountered similar issues.  On December 4, 2018, Ms. Bacs received the COBRA coverage election notice, attached as Exhibit A.   (Declaration of Susan Bacs, ¶ 12).

20.     In her attached declaration, Ms. Bacs went on to explain that following her termination, she lost her livelihood and health benefits.  (Declaration of Susan Bacs, ¶ 15).  In fact, Ms. Bacs' and her family went without health insurance for December 2018. (*Id.*). Unfortunately, both her husband and child have chronic health conditions. (*Id.*). While the Bacs went without insurance, they had to cancel previously scheduled appointments.  (*Id.*).

21.     Ms. Bacs then incurred higher costs for health insurance for herself and her children after her termination. (Declaration of Susan Bacs, ¶ 16).   For instance, her family's health insurance premiums increased by $717.54 per month. (*Id.*).

22.    The facts and record evidence in this case demonstrate that class treatment is warranted.  Plaintiffs respectfully ask that this Honorable Court grant this Motion accordingly.

## **MEMORANDUM OF LAW**

### **A.    Legal Standard.**

According to the Eleventh Circuit,  "the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Plaintiffs respectfully submit they satisfied both Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3), and ask that this Court grant this Motion.

### **B.    Standing.**

A threshold requirement of class certification is that the named plaintiff is part of the proposed class. To have "class representative standing," a class representative must ... be part of the class and possess the same interest and suffer the same injury as the class members."[6] Named Plaintiffs Susan Bacs and Jessica Roubert are unquestionably part of the class and possess the same interest and suffered the same injury as the class members.

To establish Article III standing, a plaintiff need only show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent;

---

[6] *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (quotation marks omitted); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

(ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021).

To be sure, both the Named Plaintiffs and the class members all received the same, or a substantially similar, deficient COBRA form. They also all lost their insurance thereafter. Thus, Named Plaintiffs Susan Bacs and Jessica Roubert—as well as each class member—have standing. Indeed, as the Court explained in its July 22, 2022, Order, "Plaintiffs, however, allege that they lost their insurance coverage due to the deficiency in the notice. Plaintiffs also allege that they incurred significant medical costs due to the loss of insurance. The Court finds that these allegations are sufficient to establish the causation requirement for Article III standing." (Doc. 52, p. 4).

Nothing has changed. In fact, paragraphs 15 – 22 from Plaintiffs' Supporting Facts section of this brief (incorporated here by reference for brevity), coupled with the attached sworn Declarations from both Roubert and Bacs, along with the attached sworn deposition testimony from Roubert, and the well-pleaded facts from the Amended Complaint, serve to further establish the Named Plaintiffs' standing. The Court should follow its July 22, 2022, Order and find that standing remains satisfied. *See also Vazquez v. Marriott Int'l, Inc., No. 817CV00116MSSMAP*, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (granting motion for class certification and holding that, "Plaintiff has standing because she alleges facts that present questions of whether: (1) Defendant provided adequate

13

COBRA notification and (2) the failure to receive adequate COBRA notice resulted in unpaid medical bills."); *See also McNamara v. Brenntag Mid-South, Inc*., Case No.: 8:21-cv-00618-MSS-JSS (M.D. Fla. Feb. 17, 2022) (Doc. 32)(granting final approval of deficient COBRA notice class action settlement and finding as follows, "Furthermore, the Class Representative **and Class Members** have Article III standing."). (Emphasis added).

Although not necessary, the class members also each have standing. Proposed class members are former employees of Defendant who have been identified by objective criteria—specifically because they were all sent a deficient COBRA notice by Defendant's COBRA administrator, WageWorks, and then lost their health insurance. Thus, they have standing for the same reason that Roubert and Bacs have standing. Indeed, while Defendant may attack causation in this context, any such attack on standing in this context in the Eleventh Circuit must be resolved in Plaintiffs' favor.[7]

Although Defendant will likely argue that the class is somehow unworkable, or even that the class members lack the requisite standing because Plaintiffs'

---

[7] *See, e.g., Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990)(Attacks on subject matter jurisdiction come in two forms. 'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.' *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977)). 'Factual attacks,' on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*.)

proposed class definition may "include[] individuals who experienced no impact, this contention points to whether questions of individual damages predominate, not whether the class is adequately defined and ascertainable." *Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (citing to *Speedway*, No. 8:16-CV-03280, slip op. at *3 (M.D. Fla. May 31, 2018) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

Defendant may also argue class certification is inappropriate because it requires an individualized inquiry into whether each putative class member suffered the same concrete injury attributable to the same causation. However, if raised by Capital One, such standing-related arguments should be rejected. Moreover,

***First***, the Named Plaintiffs and every class member all suffered the same concrete injury in the form of a deficient COBRA notice that caused the loss of health insurance. These facts alone satisfy the first two standing elements set forth in *Ramirez*. Likewise, the third element, redressability, is also satisfied by the Named Plaintiffs and the class members by virtue of the statutory damages and equitable relief they seek pursuant to 29 U.S.C. § 1132. *See, e.g., Bryant v. Compass Grp. USA*, Inc., 958 F.3d 617, 621 (7th Cir. 2020) ("the prospect of statutory damages shows that such an injury is redressable").

***Second***, even if the Court, in its sole discretion, chooses to examine class members' injuries and the corresponding penalties individually, "this still does not defeat class certification." *Vazquez*, 2018 WL 3860217, at *7 (M.D. Fla. Aug. 7,

15

2018).  As the Supreme Court recently noted, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.' " *Id.*[8]

**_Third_**, the COBRA notice provisions Defendant violated do not turn on whether a given employee had a "need" for continuation coverage.  So, standing arguments suggesting class members who did not want or could not afford COBRA coverage somehow lack standing fail as a matter of law.  Here, the proposed class is comprised of former Capital One Health Plan participants and beneficiaries who were enrolled in the Capital One Health Plan and who were not provided the legally required notice of COBRA continuation coverage.  "Their actual need for continuation coverage (or lack thereof) has no bearing on their membership in the class." *Bhattacharya v. Capgemini N. Am., Inc.*, 324 F.R.D. 353, 361–62 (N.D. Ill. 2018).

**_Finally_**, Plaintiffs acknowledge that in *Drazen v. Pinto*, No. 21-10199, 2022 WL 2963470 (11th Cir. July 27, 2022), the Eleventh Circuit held that a definition of settlement class was defective by including class members who lacked Article III standing because they had not suffered an injury in fact under circuit precedent.

---

[8] (*citing Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("the presence of individualized damages issues does not prevent a finding that the common issues in the class predominate.")

However, there is no issue with the proposed class definition in this case under *Drazen*.   Unlike the *Drazen* class members who lacked standing under the recent Eleventh Circuit's decision in *Salcedo v. Hanna* 936 F.3d 1162 (11th Cir. 2019) (holding that a plaintiff who received only a single text message had not suffered an injury in fact), in this case every class member suffered an injury-in-fact; namely, they all received a COBRA notice that violated the law *and* they all lost their health insurance as a result.

*Drazen* is further distinguishable because this is not a TCPA case in which the Plaintiffs' standing turns on how many unsolicited text messages, or voice messages, class members received.   Such a fact intensive inquiry is simply not required here.   Rather, unlike in *Drazen*, by definition Plaintiffs' proposed class definition includes only people in Defendant's Health Plan, "who were sent a COBRA notice by Defendant, in the form attached as Exhibit A, during the applicable four-year statute of limitations period, as a result of a qualifying event as determined by Defendant, who did not elect continuation coverage." As a result, contrary to the problematic class definition in *Drazen*, Plaintiffs have already excluded individuals who lack standing.   By way of just one specific example, participants who were sent the COBRA form but elected coverage would <u>not</u> have standing because they never lost their insurance under the Capital One Health Plan.   For that reason, they are not included in the Plaintiffs' proposed class definition.   Thus, Plaintiffs' proposed class definition complies with *Drazen*.

**C.   <u>Ascertainability</u>.**

Ascertainability is no longer a requirement for class certification under Rule 23 in this Circuit. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). ("We hold that administrative feasibility is not a requirement for certification under Rule 23."). Nonetheless, not only is the class ascertainable, Defendant has already identified 28,763 class members—along with their last known addresses.

**D.** **Plaintiffs Satisfied All of the Rule 23 (a) Class Certification Requirements.**

**1.** **The Proposed Class Is Sufficiently Numerous.**

The first requirement under Rule 23(a) is that the putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the class is comprised of 28,763 persons. Numerosity is satisfied.

**2.** **Plaintiffs Have Presented Common Questions of Fact and Law.**

"Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F. 3d 807, 811 (11th Cir. 2011); *Cooper v. Southern Company*, 390 F. 3d 695, 714 (11th Cir. 2004). Proof of commonality is a "relatively light burden." *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010).

Plaintiffs' Amended Complaint alleges several common questions. Just by way of example, Plaintiffs challenge: (1) whether Defendant violated COBRA's notice requirements; and, (2) whether and to what extent statutory penalties are appropriate. Plaintiffs' putative class only includes individuals who were sent a COBRA Notice, as substantiated by Defendant's evidence, and who did not elect

18

coverage. Thus, each member of the purported class did receive, or should have received, the allegedly inadequate Notice and as such, has a claim, for statutory penalties, against the Defendant for the failure to provide adequate Notice. Consequently, as Judge Scriven held in *Vazquez,* Plaintiffs have alleged, as a threshold matter, common questions of fact concerning whether the COBRA Notice complies with the law.  *See, e.g., Vazquez v. Marriott Int'l, Inc*., No. 817CV00116MSSMAP, 2018 WL 3860217, at \*3 (M.D. Fla. Aug. 7, 2018); *see also Pierce v. Visteon Corp*., No. 1:05-CV-1325-LJM-VSS, 2006 WL 6667384, at \*3 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class").

An award of damages to one putative class member for a violation of COBRA justifies the award of damages to the remaining class members under the same legal theory, subject to the same defenses.  Even if the award of damages were to vary among class members, the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp*., 333 F. 3d 1248, 1261 (11th Cir. 2003).

While it is true that the award of damages may vary among class members based on the date of their termination, the *per diem* statutory penalty to be decided by the Court should probably be the same for all class members. The Defendant's conduct towards the proposed class is uniform. In the present case, differences in individual damages will be minimal. The only difference will be the calculations, based on the number of days, which is merely a mechanical.  *Mills v. Foremost Ins.*

*Co.*, 511 F.3d 1300, 1310 (11th Cir. 2008).  If there is any reason to differentiate among class members, that can best be decided in connection with the presentation of all facts in a single trial.   Commonality is met.

> **3.    The Claims Presented by the Proposed Class Representatives Are Typical of the Claims of the Class.**

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008).

In this case, the legal theory underlying the claims of the putative class members is identical to the Named Plaintiffs' claims.  Here, Plaintiffs' claims are typical of the putative class they seek to represent, as they allege to have received the same COBRA notice as the putative class members and, thus, their claims issue stem from the same COBRA election notice (attached as Composite Exhibit A).

Defendant has identified over 28,763 people who fit the class definition, which tracks the same class definition certified *Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018), along with the class definitions from the *Valdivieso*, *Hicks*, *Silberstein*, *Rigney*, *Morris*, *Taylor*, *Kaintz*, *McNamara*, and *Carnegie* cases cited *supra*.[9]  Accordingly, Rule 23(a)(3)

---

[9] When responding to this Motion Defendant will likely cite to an inapposite Report Recommendation (not an Order) entered in *Bryant v. Wal-Mart Stores, Inc.*, No. 16- 24818-CIV, 2020 WL 4333452, at *1 (S.D. Fla. July 15, 2020) ("the *Bryant* R & R")(holding plaintiff lacked standing at the class-certification stage because plaintiff "had already secured coverage under her

is also satisfied. *See, e.g., Pierce*, 2006 WL 6667384, at *4 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory.")

Individual variations among class members' claims with respect to the extent of their damages do not defeat typicality for purposes of class certification. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Differences in the amount of damages between the class representative and other class members does not affect typicality."). Simply put, there is a sufficient nexus between the claims of the Named Plaintiffs and those of the class members such that typicality is satisfied.

Defendant may argue that the Named Plaintiffs' purported individualized lack of understanding of the COBRA Notice somehow defeats typicality. However, whether a COBRA Notice provides adequate information is not based on an

---

domestic partner's Plan coverage by the time she received her COBRA election notice."). However, this case is easily and readily distinguishable from the *Bryant* R & R. Unlike here, in the defendant no plaintiff suffered a lapse of coverage, nor paid increased insurance premiums, nor acted differently as a result of the deficient COBRA notice at issue. That is simply not what happened in this case. For example, Bacs and her family lost their health insurance during the entirety of December of 2018. (Declaration of Susan Bacs, ¶ 15). Additionally, Jessica Roubert lost coverage and, as a result, her disabled young son lost access to his special needs dentist and she had to stop "seeing a psychiatrist and later ran out of my prescribed medicines to the detriment of my mental health. Only later, during this lawsuit, did I learn that for approximately an extra fifty dollars ($50) per month more than what I paid for insurance through my husband's employer." (Declaration of Jessica Roubert, ¶ ¶ 15-16). Such facts distinguish this case from the *Bryant* R & R, making it inapplicable here. This case is much closer, both procedurally and factually, to *Vazquez v. Marriott Int'l, Inc.,* No. 817CV00116MSSMAP, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018).

individual's understanding of the notice but, rather, an objective determination of whether the mailer complies with the letter of the statute. *Rodriguez v. Int'l Coll. of Bus. And Tech.*, 364 F.Supp.2d 40, 46 (D.P.R. 2005).

**4.** **The Proposed Class Representatives Will Fairly and Adequately Protect and Represent the Interests of the Class.**

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F. 3d 1181, 1189 (11th Cir. 2003).

According to the Supreme Court, the central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). The proposed Class Representatives, Susan Bacs and Jessica Roubert, can and will fairly represent the interests of the Class and have no conflicts with or antagonistic to the Class. (*See* Declaration of Jessica Roubert, ¶ 6); (*see also* Declaration of Susan Bacs, ¶ 6). Both answered extensive written discovery propounded by Defendant. Ms. Roubert has already been deposed, and Ms. Bacs is set to be deposed on August 12, 2022. Both have represented the class well thus far—and they will continue doing so.

Lastly, the proposed Class Representatives, Susan Bacs and Jessica Roubert, retained the undersigned counsel who possess the requisite experience litigating

class actions, including employee rights' claims in Federal court.   Copies of the undersigned Declarations identifying their extensive class action and litigation history are attached hereto.   (*See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek).   Plaintiffs respectfully submit that adequacy under Rule 23(s) is satisfied.

## E.   **Plaintiffs Have Also Satisfied Rule 23(b)(3).**

Once the requirements of Rule 23(a) have been met, Plaintiffs must then satisfy at least one of the alternative requirements of Rule 23(b) for the proposed class to be certified.   Plaintiffs rely on Rule 23(b)(3).

### 1.   **Common Issues Predominate.**

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis.   Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials.   *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate.   The central issues revolve around a standardized COBRA notice that was common to all class members, whether that notice was lawful, and whether Defendant should be required to pay statutory penalties for utilizing that notice.

In other, similar cases involving COBRA notices, courts have found that common issues predominated. *See, e.g., Slipchenko v. Brunel Energy, Inc.*, 2013 WL 4677918, at *13 (S.D. Tex. Aug. 30, 2013); *Pierce*, 2006 WL 6667384, at *5. Merely that a few minor differences may exist between COBRA notices utilized by

Capital One during the class period, mainly with respect to the COBRA form's grammar and formatting, does nothing to interfere with the fact that in this case, which rests on the deficient COBRA election notice sent out by Defendant, the common questions identified above unquestionably predominate over any individualized issues, making class treatment appropriate. *See Reardon v. Closetmaid Corp.*, 2013 WL 6231606, at *18 (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] … is not fatal to the predominance requirement's fulfillment.").

When responding to this Motion, Defendant will likely argue that common questions do not predominate because individualized proof of the motivations of thousands of putative class members is required to determine whether, and to what extent, Defendant is liable. More specifically, Defendant may argue predominance cannot be met because too many individualized questions exist as to the class members, including whether and which class members could afford coverage,  whether and which class members obtained insurance elsewhere before losing coverage, etc.

However,  the Court should reject any such arguments outright.  As Judge Scriven explained in *Vazquez*: "The resolution of whether the COBRA Notice complied with the law, however, does not break into individualized inquiries; rather, it is an objective determination and central to the resolution of any claims of any purported class members. Thus, the question of individual class members'

motivations is irrelevant as to Defendant's liability for the allegedly inadequate COBRA notice."[10]  This Court should follow *Vazquez*.  Predominance is established.

## 2.    A Class Action is Superior to Adjudicate This Claim.

Finally, superiority under Rule 23(b)(3) is also established.  "The second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' " Here the superiority requirement of Rule 23(b)(3) is easily satisfied. There is little individual interest in individual control over this lawsuit.  Members of the Class have not filed individual lawsuits against the Defendant. Moreover, the manageability of handling thousands of COBRA claims against Defendant would be facilitated by the class action vehicle.   Accordingly, concentrating all the potential litigation concerning the COBRA rights of Plaintiffs and the putative class in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the parties, and is the most efficient means of resolving the COBRA claims of the Plaintiffs and Putative Class Members.

**WHEREFORE,** Named Plaintiffs move this Honorable Court to certify the "National COBRA Putative Class" defined on page 1 of this Motion; appoint Named Plaintiffs Jessica Roubert and Susan Bacs as Class Representatives; appoint undersigned counsel as class counsel; and allow them to notify the Class members via a Court-approved notice.

---

[10]*Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *6 (M.D. Fla. Aug. 7, 2018).

Dated this 3rd day of August, 2022.

Respectfully submitted,

*/s/Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of August, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**