# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JESSICA ROUBERT,**

     **Plaintiff,**

**v.**                              **CASE NO.: 8:21-cv-2852-TPB-TGW**

**CAPITAL ONE FINANCIAL
CORPORATION,**

     **Defendant.**
_____/

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
### <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

Pursuant to Fed. R. Civ. P. 23, named Plaintiff, Jessica Roubert ("Named Plaintiff" or "Plaintiff"), files this Unopposed Motion with incorporated Memorandum of Law. A proposed Order granting this Motion is attached as Exhibit A. Defendant supports the ultimate relief requested by Plaintiff (together, the "Parties") and joins Plaintiff in requesting that the Court approve the Order attached as Exhibit A.  In support of this Unopposed Motion, Plaintiff respectfully submits the following:

## I.    BACKGROUND AND OVERVIEW OF SETTLEMENT.

Plaintiff filed a Class Action Complaint against Defendant in which she asserted claims for herself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and the putative class against Defendant.

The terms of the Settlement Agreement were carefully modeled after similar COBRA class action settlements approved in the Middle District of Florida, including by Judge Scriven in *Rigney, et al. v. Target Corp.*, M.D. Case No. 8:19-cv-01432-MSS-JSS (March 14, 2021, Docs. 58-59), and *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127); Judge Merryday in *Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92); Judge Moody in *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept.

5, 2018) (Doc. 34); and Judge Jung in *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No. 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).

If approved here, the settlement provides for immediate relief to an estimated 15,927 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendant has agreed to create a common fund of $285,000 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $17.89 per Settlement Class Member, with a net amount of between $7.00 and $10.00 per Settlement Class Member, amounts which are consistent with other COBRA class action settlements approved by this Court. There is no reverter of settlement funds to Defendant. Subject to Court approval, attorneys' fees and costs along with the cost of administration will also be paid from the fund and a general release payment to Jessica Roubert. If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, Bay Area Legal Services.  In sum, the proposed settlement is fair and reasonable, and preliminary approval by the Court should be granted.

## A.   __The Claims and Case Background__.

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) and 29 U.S.C. § 1166(a). The lawsuit generally alleges Defendant provided Plaintiff and other Class Members with a deficient

COBRA election notice ("COBRA Notice" or "Notice"). More specifically, Plaintiff asserted that Defendant's COBRA Notice did not adequately inform her how to exercise her rights to elect COBRA coverage. Plaintiff has further alleged that, in violation of 29 C.F.R. § 2590.606–4(b)(4), the Notice failed to: (i) include a date certain on which continuation coverage ends; and (ii) be written in a manner calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Plaintiff sought statutory penalties, injunctive relief, attorneys' fees and costs on behalf of herself and all others similarly situated. Throughout the litigation, Defendant has denied that any purported violation occurred and has asserted that its COBRA Notices have complied with any and all applicable laws.

By way of further procedural background, the original complaint in this lawsuit was filed on December 7, 2021. Following the completion of: (i) extensive written discovery and depositions, including third party discovery; (ii) briefing and a ruling the court on a potentially dispositive motion to dismiss; (iii)  full briefing on class certification by both parties; (iv) and an arms-length mediation before third party mediator, Carlos Burruezo, during which both sides were represented by experience class counsel, the Parties reached a resolution to this action and the Parties now enter into this Class Action Settlement Agreement and Release, which memorializes in full the terms of the Parties' amicable resolution of this case.

More specifically as to the mediation, on October 14, 2022, the Parties participated in an all-day mediation session with Mr. Burruezo. Both sides were

well-represented. Defendant was represented by two defense lawyers from Morgan, Lewis & Bockius LLP, Jeremy Blumenfeld and Christopher Diffee, along with its own in-house counsel. Plaintiff was represented by the undersigned lawyers, Luis Cabassa, Brandon Hill, and Amanda Heystek from Wenzel Fenton Cabassa, P.A.

### B.    **Defendant's Defenses**.

Had mediation been unsuccessful, Defendant had available to it a myriad of defenses to Plaintiff's allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages, and a possible standing defense. Specifically, Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class members because the COBRA Notice complied with the notice requirements under ERISA, COBRA, and relevant regulations. Furthermore, Defendant denies that Plaintiff suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of

4

time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

## II.   **THE PROPOSED SETTLEMENT.**

### A.   **The Proposed Settlement Class.**

The Settlement Agreement defines the proposed Settlement Class as follows: "All participants in the Capital One Health Plans who were sent a COBRA Notice lacking the "Maximum COBRA Eligibility Date If Elected" during the Class Period as a result of a qualifying event, as determined by Defendant, who did not elect COBRA". The Class Period is defined as the period from December 7, 2017, to the date of the Court's preliminary approval order. According to the records of Defendant's third-party COBRA administrator, the class is comprised of an estimated 15,927 people.

### B.   **Benefits to the Settlement Class.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all Settlement Class Members in exchange for the Defendant's agreement to pay $285,000 to a settlement fund ("Settlement Fund"). Each Class Member is entitled to a gross pro-rata portion of the Settlement Fund totaling $17.89. After deducting the estimated attorneys' fees and litigation costs, the cost for settlement administration, and a general release payment to the Named Plaintiff, each of the Settlement Class Members are entitled to receive a net

payment of between $7.00 and $10.00.[1]   All Class Members will automatically receive a check without having to take any action whatsoever, making this a "claims paid" settlement. Importantly, no funds will revert to Defendant. Any remaining funds will be paid to *cy pres* recipient Bay Area Legal Services, subject to Court approval.

The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund and the class definitions were agreed upon. Plaintiffs' counsel will file a separate fee petition with the Court addressing fees and costs.  The Named Plaintiff will request Court approval of $5,000 as a general release payment, which is separate from the release of her claim as a Settlement Class Member. Neither settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees being approved.

## C.   <u>Administration of Notice</u>.

The Parties have agreed to utilize a private third-party vendor, American Legal Claim Services, LLC, ("ALCS"), to administer notice in this case (the "Settlement Administrator"). The Parties have also agreed that all fees and

---

[1] $285,000 / 15,927 total Settlement Class Members = $17.89 gross pro rata recovery per Class Member; $95,000 in attorneys' fees - $6,486.35 in litigation costs - $55,000 for cost of administration - $5,000 general release payment = $123,513.65 / 15,927 = $7.75 net pro rata recovery per Class Member.  Because the cost of administration may vary slightly (due to competing bids from different administrators), the net amounts to class members will range from at least $7.00 up to $10.00.

expenses charged by the Settlement Administrator shall be paid from the Settlement Fund.

**D.     Class Action Fairness Act Notice.**

The Settlement Administrator will cause notice of the proposed settlement to be served upon the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 ("CAFA"), in substantially the form of the CAFA notices attached as Exhibit E to the Settlement Agreement.

**III.   PRELIMINARY CLASS CERTIFICATION.**

As part of preliminary approval of the settlement, the Parties respectfully seek certification of the Settlement Class solely for the purposes of settlement, as described here.

**A.     The Settlement Meets the Requirements of Rule 23(e) for Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009).  "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class."  *Smith*, 2010 U.S. Dist. LEXIS, at *5-6. "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*,

2015 U.S. Dist. LEXIS 81518, at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter an order preliminarily approving the Class Action Settlement Agreement.

### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that Named Plaintiff, Jessica Roubert, along with Plaintiff's counsel, adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (citing *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Jessica Roubert, is adequate given that her interests are equivalent to those of the Settlement Class. She has, at all times, been actively involved in this case. She participated in the drafting and reviewing of pleadings.

She responded to multiple written discovery requests from Defendant and sat for a deposition.  Additionally, she participated in the settlement of this case by attending mediation. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. She, along with her counsel, secured a six-figure settlement from a sophisticated and well-represented Defendant in favor of the Class Members she seeks to represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations.  In fact, Mr. Cabassa and Mr. Hill have been appointed as class counsel in multiple COBRA class action cases, including in *Rigney, et al. v. Target Corp.*, M.D. Fla. Case No. 8:19-cv-01432-MSS-JSS (March 14, 2021, Docs. 58-59), *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127), *Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92), *Hicks v. Lockheed Martin Corp, Inc.*, M.D. Fla. Case No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34), and in *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No. 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010),

*aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2.   The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations and mediation between the Parties represented by experienced counsel. Indeed, the settlement was negotiated at arm's length between Plaintiff's counsel and counsel for Defendant and was ultimately the result of a successful mediation before a class-action mediator. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The proposed settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length negotiations between the Parties and their counsel. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and

conducted good faith negotiations in an effort to avoid costly and protracted litigation. Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS, at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

In sum, the attorneys who conducted the negotiations for the Settlement Class have many years of experience in conducting complex class action litigation and were thoroughly conversant with the strengths and weaknesses of the case. The decision of Plaintiff's counsel on settlement should be given great deference. This also weighs in favor of approval. *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.")

### 3. <u>The Settlement Provides Significant Relief to Class</u>

**Members.**

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The settlement requires Defendant to pay $285,000 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $17.89 per Settlement Class Member, with a net recovery of between $7.00 to $10.00 per Class Member. This falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class in COBRA class action case); *Rigney, et al. v. Target Corp*., 8:19-cv-01432-MSS-JSS (March 14, 2021, Docs. 58-59) (Judge Scriven approved $17 gross payment and $10 net payment to class members in COBRA class action case); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement in COBRA notice case in which each class member's gross recovery was $24 and net of $13).

The settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be

satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

Notably, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. In determining whether a proposed settlement is fair, adequate, and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (citations and quotations omitted).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty

because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014), *aff'd*, 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification"); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Likewise, summary judgment had not been briefed. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g., In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are

uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement, the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the amount that might have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Notices.

### 4. <u>The Proposal Treats Class Members Equitably Relative to Each Other.</u>

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats Class Members equitably. As set forth above, with the Settlement Class comprised of an estimated 15,927 participants, each Settlement Class Member will receive a gross settlement payment of $17.89 and an estimated net settlement

payment of between $7.00 to $10.00. Importantly, this is a "claims paid" settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the settlement is deemed effective under the settlement agreement ("Settlement Effective Date" or "Effective Date"). If settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiff had chosen to continue to litigate her claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages.

First, with respect to liability, important issues remained to be decided upon the evidence presented.

Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff proved Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages or even nothing at all.

Third, even if Plaintiff made it to and overcame summary judgment, won at trial, and then convinced the Court (not a jury) to award statutory penalties, Defendant likely would have appealed any final adverse judgment, meaning

16

Plaintiff would also need to survive appellate proceedings, which is particularly risky given that the Eleventh Circuit has not before ruled on the precise COBRA issues presented by this case.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. <u>The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties</u>.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best) and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

**IV.    The Proposed Notice of Settlement Is Reasonable.**

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

Under the Settlement, each Settlement Class Member will be sent a Short Form Notice of the proposed settlement via U.S. First-Class Mail in the form of a postcard, informing them of the terms of the settlement and their right to object to or opt-out of the settlement, subject to Court approval in its Preliminary Approval Order of both the Short Form and Long Form Notice. The Short Form Notice will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided, along with a 1-800 informational number and call center. The content of the Long Form Notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for

requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices of Settlement include all of this information. In addition, the Notices of Settlement clearly spell out the terms of the proposed Settlement, provide a website address where Settlement Class Members can obtain a copy of the Settlement Agreement and other relevant documents, and include a phone number that they may call if they have any questions. Accordingly, this Court should approve both the Short Form and the Long Form Notice of Settlement, as both the content of the notices and the methods of dissemination are reasonable.

## V.     **Class Certification Is Appropriate Under Rule 23(a) for Settlement Purposes.**

In addition to approving the proposed settlement and the Notices of Settlement, this Court should also certify the proposed Settlement Class for settlement purposes only, under Fed. R. Civ. P. 23(a). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted). Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).

However, in the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be

manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League,* 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.,* 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### A.    The Requirements of Rule 23(a) Are Met.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiff has satisfied all four requirements as set forth below.

### 1.    Numerosity.

Rule 23(a)(1) requires Plaintiff to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are an estimated 15,927 Settlement Class Members. Numerosity is satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

### 2.    Commonality.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." In order to satisfy this requirement, there must be "at least one issue

whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).

"The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted). Here, there are common issues regarding (among other things): (1) whether Defendant violated COBRA's notice requirements; (2) whether any such violation was willful or the result of bad faith; and (3) whether and to what extent statutory penalties are appropriate. These common issues support certification of the proposed Settlement Class for settlement purposes only. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class"); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist LEXIS 6235, at *5 (M.D. Ala. Jan. 16, 2013) (finding commonality satisfied and certifying COBRA notice class for settlement purposes).

### 3.   **Typicality.**

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.,* 275 F.R.D. at *3 n.8 (citation omitted). Typicality is satisfied where the named plaintiff's claims "arise from the

same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiff is typical of the Settlement Class she seeks to represent, as she received the same COBRA Notice as the putative Class Members and her claims stem from that COBRA Notice. Accordingly, Rule 23(a)(3) is also satisfied. *See Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

### 4.   **Adequacy.**

The requirement of adequate representation addresses two issues: (1) whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673. Here, Plaintiff's counsel has extensive experience litigating class action cases, including COBRA notice cases. *See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Marc Edelman. Moreover, "[t]here is nothing to indicate that [plaintiffs'] interests are in conflict with any members of the class." *Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000). To the contrary, Plaintiff "share[s] common interests with the class members and seek[s] the same type of relief[.]" *In*

*re Checking Account Overdraft Litig.*, 275 F.R.D. at *7. Accordingly, the adequacy requirement is also met.

### B. The Requirements of Rule 23(b)(3) Are Also Met.

In addition to satisfying Rule 23(a), Plaintiff must also satisfy Rule 23(b)(3). Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class in this case meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1. Predominance.

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The central common issues in this case concern a standardized COBRA Notice that was common to all Settlement Class Members as all Class Members are believed to have received the

23

same deficient COBRA Notice. Moreover, common questions of law and fact pertain to whether Defendant should be required to pay statutory penalties for utilizing that particular notice. *See, e.g., Slipchenko v. Brunel Energy, Inc.*, 2013 U.S. Dist. LEXIS 124159 (S.D. Tex. Aug. 30, 2013) (COBRA case finding common issues predominated).

### 2. Superiority.

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for individual members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class Members, the individual interest in controlling the case through separate actions is relatively low.

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla.

2011). Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Indeed, the Settlement Class Members who received Defendant's COBRA Notice are unlikely to be aware that their rights may have been violated and are therefore unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection, LLC*, 250 F.R.D. 366, 374 (N.D. Ill. 2008) (finding class action superior method of litigation where class members might not be aware that they have legal claims). Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties, which may not be awarded), it is unlikely that Class Members would pursue their claims. And, even if Settlement Class Members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). Thus, a class action is superior to other available methods for fairly and efficiently adjudicating this dispute.

For the foregoing reasons, Named Plaintiff Jessica Roubert respectfully asks the Court enter the attached proposed Preliminary Approval Order (*see* Exhibit A).

## CERTIFICATE OF GOOD FAITH

Plaintiff's counsel certifies that, in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

DATED this 13th day of December, 2022.

Respectfully submitted,

/s/Brandon J. Hill
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of December, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

/s/Brandon J. Hill
**BRANDON J. HILL**