UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA ROUBERT,

    Plaintiff,

v.                                   CASE NO.: 8:21-cv-2852-TPB-TGW

CAPITAL ONE FINANCIAL
CORPORATION,

    Defendant.
_____/

**PLAINTIFF'S SUPPLEMENTAL BRIEF ADDRESSING
GENERAL RELEASE PAYMENT,
AND TIMING OF PLAINTIFF'S FEE PETITION**

At the April 13, 2023, final fairness hearing the Court requested additional briefing to explain why the General Release payment is allowed in light of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), and also "on the issue of whether the timing of the objections with the filing of attorney fee motion is acceptable." In response to the Court's Order, Class Representative, Jessica Roubert, respectfully submits the following unopposed brief:

**BRIEF SUMMARY**

As to the second issue, specifically on the issue of whether the timing of the objections with the filing of attorney fee motion is acceptable, Plaintiff's fee petition was filed fourteen days <u>before</u> the objection deadline in this case. Thus, it does not create any of the problems the *Johnson* fee petition faced (which was filed after the objection deadline). As explained below, in *Johnson* the Eleventh Circuit

took issue with the timing of the fee petition from *Johnson* because it was not due, nor filed, until <u>after</u> the objection deadline had already expired. The timing of the filing of Plaintiff's fee petition complies with *Johnson*.

Turning to the first issue—the permissibility of the general release payment in light of *Johnson*—just a few weeks, on March 17, 2023, after briefly discussing the *Johnson* case with the undersigned at the final fairness hearing, Judge Covington approved a similar general release payment to a class representative in *Jones v. Scribe,* M.D. Fla. Case No.: 8:20-cv-02945-VMC-SPF. A copy of that Order is attached as Exhibit A. (*See* Exhibit A, *Jones* Final Order, Doc. 125, ¶14. "Named Plaintiff, Eric Jones, is awarded a general release payment of $5,000 from the Settlement Fund.")

Similarly, in *Baja v. Costco*, S.D. Fla. Case No.: 0:21-cv-61210-AHS (Dec. 9, 2021)(Doc. 56), Judge Raag Singhal from the Southern District of Florida ordered supplemental briefing on whether a general release payment was permissible in light of *Johnson*. He ultimately held that such payments are permissible. Specifically, Judge Singhal ordered the undersigned to submit the following:

> In *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), the Eleventh Circuit held that incentive awards for class action representatives that provide compensation for their time and reward them for bringing lawsuits are prohibited. "A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but [] cannot be paid a salary or be reimbursed for [] personal expenses." *Id*. at 1257. No later than 12/14/2022, the Parties shall submit additional briefing to address this issue and explain why the General Release payment is allowed in light of Johnson. Alternatively, the Parties may amend their motion and remove the General Release payment.

2

In accordance with Judge Singhal's instructions, the undersigned submitted a supplemental brief very similar to this brief. Ultimately, after submission of a similar supplemental brief to this brief, Judge Singhal approved the general release payment. As to the permissibility of the general release payment, Judge Singhal stated as follows:

> **The Court finds the general release payment does not constitute a prohibited incentive award as described in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). The general release payment was made in consideration for Baja's release of any and all claims he individually could have or did assert in the action, including claims under federal law, state or local laws, statutes, regulations, ordinances, or federal or state common law. See (DE [41-2], at 12–14). Thus, the general release payment cannot reasonably be characterized as an impermissible "salary," "bounty," or payment given to a class representative "simply by reason of his status." *See Johnson*, 975 F.3d at 1259 n.9 (citations omitted). *Johnson* specifically dealt with an explicit "incentive payment" awarded in "acknowledgement of [the class representative's] role in prosecuting the case on behalf of the class members." *Id.* at 1248. That is nothing like the case here.**

(Emphasis added). (*See* Exhibit B, *Baja* Order, p. 4, fn 1).

A copy of the Order from *Baja* stating a general release payment does not constitute a prohibited incentive award as described in *Johnson* is attached as Exhibit B. This Court should follow Judge Covington's decision from *Jones*, and Judge Singhal's decision from *Baja*, along with the many, many other federal courts cited herein, and permit the general release payment.

I. **_The Timing Issue from Johnson Does Not Apply Here._**

In the *Johnson* case, in its order preliminarily approving the settlement, certifying the class, and establishing a schedule, the district court required class members to file any objection to the settlement—including any objection pertaining to attorneys' fees—by March 19, 2018. In the same order, the district court gave class counsel until April 6, 2018, to file their fee petition—eighteen days <u>after</u> class members' objections were due. As a result, by ordering the deadlines in this manner, the Eleventh Circuit held that the district court inhibited the *Johnson* objector from objecting to the fee request, in violation of Federal Rule of Civil Procedure 23(h) and the Due Process Clause. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1251 (11th Cir. 2020). However, as explained below, the opposite occurred here. In this case Plaintiff's fee petition was filed two weeks <u>before</u> the objection deadline. Thus, any potential objectors had sufficient time to review the petition and object. None did.

More specifically as this case, the Court's Order granting preliminary approval required "any motion for attorney's fees and costs shall be filed no later than fourteen (14) days **prior** to the objection deadline for Class Members." (*See* Doc. 66. ¶ 17). The objection deadline in this case was set at March 15, 2023. (*See* Doc. 75-5, ¶ 10). Plaintiff's Unopposed Motion for Attorneys' Fees and Costs was timely filed 14 prior to that deadline, on March 1, 2023. (*See* Doc. 72). Thus, unlike in *Johnson*, where the motion for attorneys' fees was neither due, nor filed, until after the objection deadline had already expired (thus, depriving potential

4

objectors of information as to fees on which to base their objection), in this case Plaintiff's fee petition was filed at least entire weeks **before** the objection deadline. Thus, any potential objectors had sufficient time to review the petition and object. None did. Thus, the timing issue from *Johnson* does not apply here.

II.  **The *Johnson* opinion is only applicable to incentive awards that are exclusively designed to compensate a named plaintiff with a "salary" or "bounty."**

The general release payment provided for here is permissible because the *Johnson* decision only precludes incentive awards exclusively designed to provide a plaintiff with a "salary" or "bounty." Specifically, the *Johnson* Court vacated a Rule 23 TCPA class action incentive award through its analysis of *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), and held as follows:

> "A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses."

*Johnson*, 975 F.3d at 1257. The *Johnson* court went on to observe, "It seems to us that the modern-day incentive award for a class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for 'personal services.'" *Id.* The *Johnson* court then went further and criticized this category of incentive awards, which "are <u>intended</u> not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty)." *Id.* at 1258 (emphasis added). The court accordingly struck

5

down the incentive award at issue because it found the award was "part salary and part bounty." *Id.* Thus, the *Johnson* court concluded:

> In conclusion, we hold that *Greenough* and *Pettus* prohibit the type of incentive award that the district court approved here—one that compensates a class representative for his time and rewards him for bringing a lawsuit. Although it's true that such awards are commonplace in modern class-action litigation, that doesn't make them lawful, and it doesn't free us to ignore Supreme Court precedent forbidding them. If the Supreme Court wants to overrule *Greenough* and *Pettus*, that's its prerogative. Likewise, if either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute.

*Johnson*, 975 F.3d at 1260 (emphasis added).

Thus, *Johnson* does not prohibit all incentive awards for any reason, but only prohibit the "type of incentive award that the district court approved" in *Johnson. Id.* In fact, the Eleventh Circuit in *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. April 22, 2019) discussed a similar objector's argument to a different incentive award also based on *Greenough* and *Pettus*, and held: "We do not view granting a monetary award as an incentive to a named class representatives <u>as categorically improper</u>." F.3d at 1196 (emphasis added).[1] Such is the case here as to the proposed general release payment to the Named Plaintiff, Jessica Roubert.

---

[1] While the decision in *Muransky* was vacated when a rehearing *en banc* was granted, and ultimately remanded for dismissal without prejudice on standing grounds, the Eleventh Circuit in *Muransky* expressly held that *Greenough* and *Pettus* did not render "granting a monetary award as an incentive to a named class representatives [] categorically improper", and the opinion was not vacated based on this reasoning. *Muransky,* 922 F.3d at 1196, *reh'g en banc granted, opinion vacated,* 939 F.3d 1278 (11th Cir. 2019), and *on reh'g en banc,* 979 F.3d 917 (11th Cir. 2020).

6

### III. *Johnson* does not preclude service awards that are provided in exchange for a general release.

General releases that are supported by independent consideration are routinely approved in employment law settlements,[2] including specifically in class action settlement approved after the *Johnson* was issued. *See, e.g., Twardosky v. Waste Management, Inc.,* Case No. 8:19-cv-02467-CEH-TGW (M.D. Fla. June 28, 2021, ECF No. 58), final approval granted in Fair Credit Reporting Class Action and stating as follows, "Plaintiff Josh Twardosky is awarded a general release payment totaling $10,000.00, in addition to the net payment he will receive as a class member."); *Candiss Tweedie v. Waste Pro of Fla., Inc.*, Case No. 8:19-cv-01827, (M.D. Fla. August 5, 2021) (Adopting May 4, 2021 Report and Recommendation, (ECF No. 57), in a Fair Credit Reporting Act class action settlement, which provides for a $7,500 incentive award to the named plaintiff in exchange for a general release.); *McNamara v. Brenntag Mid-South, Inc.*, Case 8:21-cv-00618 (M.D. Fla. Feb. 17, 2022(Doc. 32)(approving $5,000 general release payment to class representative in class action case).

---

[2] *See, e.g., O'Neill v. Speedster Services, LLC*, 6:18-cv-120-ORL 37GJK, 2018 WL 4956775, at *4 (M.D. Fla. Sept. 11, 2018) (Separate consideration for a general release allowed for approval of agreement in FLSA case)(Kelly, J.), *report and recommendation adopted*, 2018 WL 4953239 (M.D. Fla. Oct. 12, 2018)(Dalton, J.); *Martinez v. Ambi Paving, LLC*, 6:18-cv-737-Orl-37GJK, 2018 WL 5003754, at *3 (M.D. Fla. Oct. 11, 2018)(additional consideration for the release of retaliation claims not pleaded was sufficient)(Kelly. J.), *report and recommendation adopted,* 2018 WL 4963697 (M.D. Fla. Oct. 15, 2018)(Dalton, J.); *Singh v. Petersen Dean Roofing & Solar Sys., Inc.*, 6:17-cv-1110-Orl-41DCI, 2018 WL 3235572, at *1 (M.D. Fla. June 6, 2018) ($300.00 in exchange for a general release was sufficient)(Irick, J.), *report and recommendation adopted as modified*, 2018 WL 3219410 (M.D. Fla. July 2, 2018)(Mendoza, J.)

7

Here, the Parties' settlement agreement provides for the following additional consideration Defendant agreed to pay in exchange for a general release from Ms. Roubert:

> In addition to the Released Claims by Class Members above, Named Plaintiff only agrees to provide a general release of all claims against the Released Parties ("General Release"). Pursuant to the General Release, Plaintiff Jessica Roubert agrees to release and forever discharge the Released Parties from any and all claims, charges, actions, causes of action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, and judgments, including but not limited to claims under ERISA and/or COBRA, and any other claims and demands whatsoever, whether known or unknown, in law or equity (i) that she ever had, now have or hereafter may have based in whole or in part on any act or event from the beginning of time until the Effective Date, upon, or by reason of any matter, cause, or thing whatsoever; and/or (ii) that would be barred under claim preclusion or issues preclusion.

Doc. 65-2, p. 12, ¶¶ 43, 45.

Thus, the settlement agreement in this matter expressly provides that the service award at issue is in exchange for a general release. *Id.* Defendant in this matter received a general release from Plaintiff covering all potential claims related to his employment, beyond the COBRA-related claims raised in the instant lawsuit.

By way of further analysis, *Johnson* disapproves only two very specific type of payments to named plaintiffs in class actions defined in *Johnson* as: "salary" (i.e., compensation for time spent on the litigation) and "bounty" (i.e., a "prize," for the promotion of litigation). *Id.* at 1258. But the relatively small proposed $5,000 general release payment here to Plaintiff is neither a "salary" nor a

"bounty." Nor is it something given to "a class representative 'simply by reason of his status.'" *Johnson*, at 1259 n.9. Thus, *Johnson* does not prohibit the proposed general release payment to Plaintiff in this case.

Notably, honoring her duty to absent class members, Plaintiff did not bargain away Class Members' rights to bring any suits or claims except under applicable COBRA/ERISA regulations, the very thing this suit was about. Plaintiff, by contrast, released every claim relating to her employment with Defendant, no matter what law, regulation, or common law theory might be involved. This was, plainly and on its face, not salary. It was not bounty. The payment is, expressly and actually, consideration for a general release that only Plaintiff gave. Thus, *Johnson* does <u>not</u> prohibit "the type" of award to which the Parties agreed with respect to Plaintiff.

Nothing about Plaintiff's request for a general release payment makes the class settlement unfair, or suspect, at all. This is further supported by the fact that no objections were made to it, nor to the settlement in general. There is no reason to think it unusual, or suspect, that an employer would agree to a general release from a former employee. Employers regularly make deals with departing employees giving them severance payments much larger than that, in exchange for general releases. Similarly, in settling single plaintiff employment lawsuits, it is standard practice for the employer to pay some additional amount to obtain, in addition to dismissal of the lawsuit, a general release.

Not only that, the Court-approved class notice was mailed out to over 16,000 class members throughout the country. That notice included information on the proposed general release payment the parties propose paying to Plaintiff. None of the Class Members objected to Plaintiff's request for a general release payment. This weighs heavily in favor of approving the payment.

Indeed, the Middle District has recognized that even a settlement that began with an "incentive payment" and then was modified after *Johnson* to include a payment-for-general-release instead was different from what *Johnson* forbade:

> While the Eleventh Circuit held incentive or service awards that compensate a class representative solely for his time and for bringing a lawsuit unlawful, the facts of the instant case differ. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) ("the type of incentive award that the district court approved here— one that compensates a class representative for his time and rewards him for bringing a lawsuit" while commonplace is unlawful). While the settlement agreement contains references to a "service award," in the second amended motion and notice, the parties clarified that Broughton is receiving additional compensation for executing a supplemental agreement, which contains a much broader release of claims.

*Broughton v. Payroll Made Easy, Inc.*, No. 2:20-cv-41-NPM, 2021 U.S. Dist. LEXIS 139514, at *8 n.5 (M.D. Fla. July 27, 2021).

Likewise, it has been recognized that a payment to a named plaintiff that is characterized by the parties as an "incentive award" and consideration for a general release is acceptable after *Johnson*:

> Here, the parties have agreed that Plaintiff Dozier will receive $7,500 as a service fee award and as consideration for his general release of claims, if

10

> approved by the Court, and argue that Johnson is inapplicable in this case. Although service awards have been rejected in this district in light of *Johnson*, or withheld until Johnson is more settled, here, the $7,500 payment to Plaintiff Dozier also represents separate consideration for a general release, which the undersigned recommends does not render the Settlement Agreement unenforceable and provides the Court with a separate basis for approval of the payment.

*Dozier v. DBI Servs. LLC*, No. 3:18-cv-972-BJD-MCR, 2021 U.S. Dist. LEXIS 245359, at *26 (M.D. Fla. Dec. 22, 2021), *adopted*, *Dozier v. DBI Servs. LLC*, No. 3:18-cv-972-BJD-MCR, 2022 U.S. Dist. LEXIS 10912 (M.D. Fla. Jan. 19, 2022) (approving settlement)

All the more clearly, a payment for release is outside of *Johnson*'s scope where (as here) that payment-for-release was always and expressly the only thing that the named plaintiff would be getting. *See also Twardosky v. Waste Management, Inc.,* Case No. 8:19-cv-02467-CEH-TGW (M.D. Fla. June 28, 2021, ECF No. 58), final approval granted in Fair Credit Reporting Class Action and stating as follows, "Plaintiff Josh Twardosky is awarded a general release payment totaling $10,000.00, in addition to the net payment he will receive as a class member."); *Candiss Tweedie v. Waste Pro of Fla., Inc.*, Case No. 8:19-cv-01827, (M.D. Fla. August 5, 2021) (adopting May 4, 2021 Report and Recommendation, (ECF No. 57), in a Fair Credit Reporting Act class action settlement, which provides for a $7,500 incentive award to the named plaintiff in exchange for a general release.); *McNamara v. Brenntag Mid-South, Inc.*, Case 8:21-cv-00618 (M.D. Fla.

11

Feb. 17, 2022(Doc. 32) (approving $5,000 general release payment to class representative in class action case).

In sum, the Court should approve Plaintiff general release payment in this matter, which was provided in exchange for a general release.

### IV. **Policy Considerations Favor Approval of the General Release Payment.**

While the Court should permit the service award at issue based on the aforementioned, it is also worth noting that consideration of public policy would preclude the application of *Johnson* to general release payments in employment-related class actions. In a TCPA case like *Johnson*, where a consumer sues a phone carrier, or in a case like *Greenough* where a bondholder sues trustees, or in a case like *Pettus* where a creditor sues the purchaser of the creditor's debtor, there is no risk of retaliation from an employer or of loss of employment and livelihood.

In contrast, and as a matter of public policy, such service awards are a critical part of ensuring the effectiveness of employee-based class actions because they help ameliorate the risk of retaliation and loss of income that courts around the country recognize is inherent in bringing a case against an employer, or even a former employer. *See, e.g.*, *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (Flsa) & Wage & Hour Litig.*, No. 3:14-CV-290-DJH, 2016 WL 9558953, at *8 (W.D. Ky. Oct. 31, 2016) (named plaintiffs faced "stigma upon future employment opportunities for having initiated this action against a former

12

employer").³  Indeed, courts around the country have permitted service awards to named plaintiffs in employment cases to compensate them for this risk.  *See, e.g., Vogenberger v. ATC Fitness Cape Coralw, LLC*, No. 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015) (approving service award to named plaintiff in FLSA case in part for "risk that future employers, upon a proper search, may learn that he sued a former employer").⁴  In light of these important policy considerations, the Court should not attempt to expand the application of *Johnson* beyond its proscribed limitation to the "the type of incentive award" described therein, and permit the general release payment included in the Parties' settlement agreement to Plaintiff.

## V. **Alternative Relief.**

The Court has the overall duty to ensure the fairness of the proposed settlement. However, the payment to the named Plaintiff here, being a reasonable

---

³ *See also Weirbach v. Cellular Connection, LLC*, No. 5:19-CV-05310-JDW, 2020 WL 6581498, at *5 (E.D. Pa. Nov. 10, 2020) ("individuals who serve as named plaintiffs in employment rights cases do so at the risk or their current or future employment"); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *13 (S.D. Tex. Jan. 23, 2015) ("Future employers may consider [class representatives] less desirable than other applicants because they previously sued an employer."); *Mercado v. Gate Gourmet, Inc.*, No. 207CV02305JHNCWX, 2011 WL 13187261, at *3 (C.D. Cal. Apr. 26, 2011) ("Here, each Class Representative agreed to be a named plaintiff and assumed the risk of jeopardizing their current and future employment and job security."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005) ("the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded. Indeed, those plaintiffs who have opted out of this class and have explained their reasons for that decision expressed concern that the guaranteed recovery was not worth potential discrimination by local employers.").

⁴ *See also Su v. Elec. Arts, Inc.*, No. 6:05CV131ORL28JGG, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006), *report and recommendation adopted*, No. 6:05CV131OR;28JGG, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2007) (approving $10,000 service award to named plaintiff in case "[i]n light of the risks associated with initiating litigation against his former employer").

13

and bargained payment for a general release that she and only she gave, is not forbidden by *Johnson*. Nor is there any reason to believe that this payment-for-release makes the overall settlement unfair to absent class members. Certainly, no class member has indicated so by objecting.

However, ***in the alternative***, if the Court is not inclined to approve the General Release Payment for Plaintiff, Plaintiff respectfully submits that the amount should be allocated among Class Members as part of the Settlement Fund.

DATED this 18th day of April, 2023.

Respectfully submitted,

*/s/ Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar No.: 053643
**BRANDON J. HILL**
Florida Bar No.: 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gdesane@wfclaw.com
*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of April, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

                                        */s/ Brandon J. Hill*
                                        **BRANDON J. HILL**