### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JESSICA ROUBERT,
Plaintiff,
v.                                              CASE NO. 8:21-cv-2852-TPB-TGW

CAPITAL ONE FINANCIAL
CORP.
        Defendant.
_____/

## REPORT AND RECOMMENDATION

It is alleged in this putative class action that the defendant provided the plaintiff and settlement class members with a deficient COBRA election notice, in violation of the Employment Retirement Income Security Act (ERISA).

The parties seek final approval of their Settlement Agreement, which resolves the named plaintiff's and settlement class members' claims against the defendant in consideration for the defendant's payment of $285,000 into a settlement fund (Doc. 75). The fund would be reduced by administrative settlement costs, attorneys' fees and costs, and a $5,000 general

-1-

release payment to the named plaintiff (id., p. 6).[1]   The plaintiff filed a separate motion requesting an attorneys' fee award of $95,000 and costs totaling $6,084.35 (Doc. 72).

The plaintiff establishes that, except for the $5,000 general release payment, the Settlement Agreement is a fair, reasonable, and adequate compromise of the claims in this case.   Furthermore, the Settlement Agreement is not the product of fraud or collusion. Moreover, plaintiff's counsel shows that the requested attorneys' fee award and costs are reasonable under these circumstances.

Accordingly, I recommend that the Motions for Final Approval of Class Settlement and Plaintiff's Unopposed Motion Attorneys' Fees and Costs (Docs. 72, 75) be granted, and the Settlement Agreement be approved, except for the $5,000 general release payment to the named plaintiff.

## I.

The defendant, Capital One Financial Corp., is the plan sponsor and plan administrator of the Capital One Financial Corporation Employee Welfare Plan (Plan) (Doc. 30, p. 1).  There is a requirement to provide Plan

---

[1] Pagination refers to page numbers assigned by CM/ECF.

participants and beneficiaries with adequate notice under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) of their right to continue health insurance coverage under a group health plan following the occurrence of a qualifying event, such as termination of employment ("COBRA Notice" or "Notice") (id., ¶¶1, 9).  See 29 U.S.C. 1166(a) and 29 C.F.R. 2590.606–4(b)(4).

Plaintiff Jessica Roubert ("named plaintiff," "class representative") states that she and the other settlement class members were previously employed by Capital One and were Plan participants (Doc. 30, ¶¶10, 11, 30, 32).  She alleges that the defendant provided her and other settlement class members with a COBRA election notice that did not adequately inform them how to exercise their rights to elect COBRA coverage.

Specifically, she contends that, after she resigned from Capital One, she received a COBRA Notice that failed to: (i) include a date certain on which continuation coverage ends and (ii) be written in a manner calculated to be understood by the average plan participant, in violation of 29 C.F.R. 2590.606–4(b)(4), (id., ¶¶3, 4).  The plaintiff sought reimbursement of

benefits, statutory penalties, injunctive relief, and attorneys' fees and costs on behalf of herself and all others similarly situated (id., ¶5).

The defendant denies that there was any violation and asserts that its COBRA Notices comply with all applicable laws (Doc. 75, p. 3). Furthermore, the defendant states that it has "a myriad of defenses to Plaintiff's allegations" (id.).

The parties engaged in substantial litigation prior to reaching a tentative resolution of the case after a full-day mediation with Carlos Burruezo, an experienced class action mediator (id., pp. 4-5). The Settlement Agreement provides that the defendant will create a settlement fund of $285,000 for settlement class members to resolve their COBRA claims (Doc. 65, p. 6). It is proposed that the settlement fund be reduced by $95,000 for attorneys' fees, $6,084.35 in litigation costs, approximately $55,000 for administrative costs related to class notification, and $5,000 for a general release payment to the named plaintiff (id., p. 7, n.1). As consideration for the general release payment, the named plaintiff releases the defendant from liability for all other claims that she could assert against it (Doc. 65-2, p. 18).

On December 15, 2022, United States District Judge Thomas P.

-4-

Barber issued an Order preliminarily approving the Settlement, finding that its terms are "fair, reasonable, and adequate" and the "result of arm's-length negotiations conducted with the assistance of a class action mediator" (Doc. 66, p. 3, ¶11). The court also certified, for settlement purposes, a settlement class comprising (id., p. 2, ¶5):

> All participants in the Capital One Health Plans who were sent a COBRA notice lacking the "Maximum COBRA Eligibility Date If Elected" during the Class Period as a result of a qualifying event, as determined by Defendant, who did not elect COBRA.

The Notice of Settlement ("Notice") was sent to 16,446 settlement class members, of which 486 Notices were undeliverable (Noah Fiori Dec., Doc. 75-5, ¶¶3,4,6). As of the March 15, 2023, deadline, there were no objections and only three requests for exclusion from the class (id., ¶¶9,10).

The proposed settlement affords each class member a net recovery of approximately $7.77.[2] Notably, this is a "claims paid" settlement,

---

[2] After the proposed deductions, there would be approximately $123,915.65 in the settlement fund to be split equally among 15,957 settlement class members. Those numbers were computed as follows: net settlement fund is $285,000-95,000-55,000-6,084.35-5,000

so that each settlement class member will receive her respective settlement payment without having to take any action (Doc. 75, p. 6).  It is also non-reversionary, and funds from any checks that are not cashed will revert to *cy pres* recipient Bay Area Legal Services (id.).

Judge Barber also appointed as class counsel attorneys from the law firm of Wenzel Fenton Cabassa, P.A., and named plaintiff Jessica Roubert as the class representative (Doc. 66, p. 3 ¶¶9, 10).  Plaintiff's counsel filed separately an Unopposed Motion for Attorneys' Fees and Costs (Doc. 72).

The plaintiff states in the Unopposed Motion for Final Approval of Class Settlement that "little has changed since the Court's Order granting the Plaintiff's Motion for Preliminary Approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval" (Doc. 75, p. 2).  The motion was referred to me for a final fairness hearing to determine (Doc. 66, p. 6):

> whether the Settlement is fair, reasonable and adequate and if final approval should be granted; whether any objections to the Settlement should be overruled; whether Class Counsel's motion for attorneys' fees and expenses should be granted; and

---

= \$123,915.65.  The total settlement class members: letters sent to 16,446 addresses - 486 that were undeliverable -3 opt-out persons = 15,957.

whether a general release payment to the named Plaintiff should be approved.

A Zoom hearing was held on April 13, 2023, and attended by counsel for both parties (see Doc. 77). I told counsel that I had no reservations with most aspects of the Settlement Agreement.

I primarily questioned counsel about the $5,000 "general release payment" to the named plaintiff, which apparently was not offered to the other settlement class members. Specifically, counsel did not mention in the memorandum the case of Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020), which discusses favorable treatment of class representatives and prohibits incentive awards—i.e., paying the class representative a "salary" for her time and effort, or a reward to her for bringing a class action lawsuit. I happened to recall Johnson from reading slip opinions. Plaintiff's counsel stated that Johnson was not applicable because the general release payment is not compensation for the plaintiff's services and is supported by independent consideration. However, it is far from clear that this payment is not a reward to the named plaintiff and, thus, prohibited under Johnson.

Consequently, the plaintiff was directed to submit a

supplemental memorandum explaining how her preferential recovery is lawful under <u>Johnson</u>.[3] I also requested that counsel confirm the attorneys' fee motion was filed sufficiently prior to the end of the objection period, as required by <u>Johnson</u>. The plaintiff promptly filed a supplemental memorandum (Doc. 79).

## II.

Pursuant to Rule 23(e)(2), Fed.R.Civ.P., the court must approve the settlement of a certified class. The court may approve the settlement if it is "fair, reasonable, and adequate" based on the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

---

[3] Moreover, I admonished counsel for failing to bring <u>Johnson</u> to the court's attention. Notably, I am not the only judge who thinks <u>Johnson</u> is relevant to this analysis. In fact, plaintiff's counsel was previously ordered, twice, to file a supplemental brief addressing whether <u>Johnson</u> precludes a general release payment in this circumstance. <u>See</u> <u>Turner</u> v. <u>Rosen Hotels & Resorts, Inc.</u>, No. 6:21-cv-161-CEM-GJK, 2022 WL 3046834 at *7 (M.D. Fla. June 15, 2022); <u>Baja</u> v. <u>Costco Wholesale Corp.</u>, 21-cv-61210-CIV-SINGHAL (The plaintiff noted in its Motion (Doc. 79, p. 2) that the court "ordered supplemental briefing on whether a general release payment was permissible in light of <u>Johnson</u>"). Therefore, plaintiffs' counsel's assertion that he did not foresee <u>Johnson</u> was pertinent is troubling and appears disingenuous.

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors." In re Equifax Inc. Customer Data Sec. Breach Litig., 999 F.3d 1247, 1273 (11th Cir. 2021) (citation omitted). They are:

(1) the likelihood of success at trial;

(2) the range of possible recovery;

(3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable;

(4) the complexity, expense and duration of litigation;

(5) the substance and amount of opposition to the settlement; and

(6) the stage of the proceedings at which the settlement was achieved.

Notably, "settlements are 'highly favored in the law' as 'they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'" Id. at 1257 (citation omitted). On the other hand, the court must insure that the rights of the passive class members are not jeopardized by the proposed settlement. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).

As indicated, the Settlement Agreement states that the defendant will pay $285,000 into a settlement fund in consideration for the named plaintiff's and settlement class members' release of their claims in the lawsuit (see Doc. 65). U.S. District Judge Barber has already found "on a preliminary basis that the terms of the Settlement are fair, reasonable, and adequate" (Doc. 66, p. 3, ¶11).

The relevant considerations support that the Settlement Agreement, except for the $5,000 general release payment, is fair, adequate and reasonable. There is also no evidence that it was the product of fraud or collusion. The relevant factors are discussed below.

-10-

The likelihood of the plaintiff's success favors approval of the Settlement Agreement. Of course, there are uncertainties inherent in pursuing any trial. In this case, furthermore, the defendant states that it has a myriad of defenses to the plaintiff's claims—"defenses to class certification, defenses to the merits of the case, defenses to damages, and a possible standing defense" (Doc. 75, p. 3). Moreover, the defendant likely would appeal an adverse judgment (id., p. 15). As plaintiff's counsel acknowledges, "[e]ach of these phases of litigation presented serious risks, which the settlement allows Named Plaintiff and the Settlement Class Members to avoid" (id., p. 13).

Additionally, by settling this matter, the parties seek to avoid the great expense and duration of litigation (id., pp. 3-4, 12-13, 16). Specifically, plaintiff's counsel states that "continuing the litigation would have been complicated, protracted, and expensive" (id., p. 13), and the defendant emphasizes that it wishes to settle "because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations" (id., pp. 3-4).

Furthermore, class counsel and the class representative have

-11-

represented the settlement class well in litigating the merits of the dispute and in obtaining a settlement. Thus, class counsel are experienced in handling class action litigation and complex litigation, and they have shown that the Settlement Agreement is the result of arm's length negotiations (see Doc. 75-2, ¶16). The named plaintiff was also actively involved in promoting the interests of the settlement class, as she participated in discovery and settlement discussions, and attended the Zoom mediation (Doc. 75, p. 10). These considerations also favor approval of the Settlement Agreement. See Fed. R. Civ. P. 23(e)(2)(A)–(B).

Importantly, moreover, the parties had sufficient time to develop the strengths and weaknesses of their case, and to evaluate adequately the benefits of settlement against further litigation, prior to their tentative resolution of this matter (Doc. 75, p. 12; Doc. 75-2, ¶16). Thus, they engaged in significant litigation efforts, including preparing motions to dismiss and for class certification, and conducted extensive discovery during which the parties exchanged over 1300 documents and deposed the named plaintiff and the corporate representative (Doc. 75, pp. 4-5). Furthermore, the all-day mediation was led by "highly respected mediator ... Carlos J. Burruezo, one

-12-

of the most respected class action mediators in Florida" (id., p. 12).

Therefore, the complexity, expense, and duration of the litigation, in addition to the substantial hurdles this litigation presents, clearly favor approval of the Settlement Agreement.

Additionally, the settlement class members' recovery is adequate and reasonable under the circumstances of this case. Importantly, when considering the possible range of recovery, the court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." Abercrombie v. TD Bank, N.A., No. 21-61376-CV-MARTINEZ, 2022 WL 18779705 at *3 (S.D. Fla. Dec. 9, 2022).

If the plaintiffs continue litigation and prevail in this case, "the pertinent regulations provide for a maximum statutory penalty of over $110 per day, but no minimum penalty" (Doc. 75, p. 15) (emphasis added), citing 29 C.F.R. 2575.502c-1. Thus, plaintiff's counsel cautions, "even if Plaintiff [were] able to prove that Defendant violated the COBRA notice regulation, Plaintiff and Settlement Class Members may have only recovered nominal

-13-

damages, or even nothing at all" (id., p. 15).  See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1232 (11th Cir. 2002) (penalty for violation of COBRA's notice requirement is within the court's discretion); Valdivieso v. Cushman & Wakefield, Inc., no. 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92, p. 2)("In an action over an allegedly defective COBRA notice, a plaintiff often receives a minimal sum.")

　　　　If the proposed settlement is approved, each settlement class member will receive approximately $7.77, which will be sent to each class member automatically.   If the general release payment is rejected, each settlement class member would receive about $8.01.

　　　　Although it appears to be a relatively small recovery, plaintiff's counsel cites cases within this district approving net payments of $10.00 and $13.00 per settlement class member in COBRA actions (Doc. 75, p. 13).  See, e.g., Rigney v. Target Corp., 8:19-cv-1432-MSS-JSS (March 14, 2021) (Doc. 53, p. 8) (approving a $10.00 net payment to class members in COBRA class action case).

　　　　Furthermore, none of the 15,960 class members who received the Class Action Notice opposed the settlement, and only three individuals chose

-14-

to opt out of it (Doc. 75-5, p. 2, ¶9). "This lack of opposition weighs strongly in favor of the Court's approval of the Agreement."  Jairam v. Colorpop Cosmetics, 19-CV-62438-RAR; 2020 WL 5848620 at *7; Abercrombie v. TD Bank, N.A., supra, 2022 WL 18779705 at *6 (The class settlement members' lack of opposition is evidence of its fairness, reasonableness, and adequacy.)

Moreover, counsel for the parties in this case are experienced attorneys, and plaintiff's counsel, Brandon Hill, avers that, "[b]ased on [his] involvement in many, many class actions over the last few years, including in multiple deficient COBRA notice cases filed and settled in federal courts over the last few years ... the Parties' proposed settlement is fair, reasonable, and adequate" (Doc. 75-2, ¶15).  Counsel's judgment concerning the adequacy of the settlement amount is entitled to some deference.  In re Equifax Inc. Customer Data Sec. Breach Litig., supra, 999 F.3d at 1274 (The trial judge, absent fraud or collusion "should be hesitant to substitute its own judgment for that of counsel").  Therefore, the totality of the circumstances support a finding that the amount of the settlement class members' recovery under the Settlement Agreement is reasonable and adequate under these circumstances.

In sum, except for the general release payment discussed infra,

all of the pertinent considerations favor final approval of the proposed Settlement Agreement.

III.

Judge Barber specifically requested me to address whether the general release payment to the named plaintiff should be approved (Doc. 66, p. 6). This general release payment is also pertinent under Rule 23(e)(2)(D), F.R.Civ.P., which requires the court to evaluate whether "the proposal treats class members equitably relative to each other."

As indicated, under the Settlement Agreement, the named plaintiff receives a $5,000 payment from the settlement fund in exchange for her execution of a general release. The general release extinguishes all possible claims—not just COBRA claims—that the named plaintiff may have against the defendant (Doc. 65-2, p. 18) (The defendant is released "from any and all claims … and demands whatsoever … in law or equity … that [the named plaintiff] ever had" or will have in the future). There is no evidence that other settlement class members were offered an opportunity to obtain $5,000 in exchange for executing a general release.

As mentioned, the Eleventh Circuit held in <u>Johnson</u> v. <u>NPAS</u>

-16-

Solutions, LLC, supra, 975 F.3d at 1258, that an incentive award to a class action representative to compensate for her "time (i.e., a salary) and/or to promote litigation by providing a prize to be won (i.e., as a bounty)" is prohibited. Specifically, Johnson rejected a $6,000 "Incentive Payment" to the class representative for "acknowledgment of his role in prosecuting th[e] case on behalf of the Class Members." Id., pp. 1248, 1258.

The plaintiff argues that Johnson does not prohibit this general release payment because it is not an "incentive award" for bringing this lawsuit, nor is it a salary for her service to the settlement class (Doc. 79, pp. 8-9). Rather, she states that the $5,000 payment is supported by the independent consideration of extinguishing all other possible claims she has against the defendant, and that Florida federal courts have approved such payments.

Regardless of how the plaintiff characterizes this payment, several circumstances indicate that it is "a thinly veiled attempt to circumvent Johnson." Abercrombie v. TD Bank, N.A., supra, 2022 WL 18779705 at *6. Thus, there is no evidence that the other settlement class members were offered the opportunity to receive $5,000 in exchange for a general release of

-17-

their claims, nor does the named plaintiff identify any claim that she uniquely possesses which justifies treating her more favorably in this respect. It is also suspect that the payment to release her non-COBRA claims come from a fund created to settle COBRA claims (see, e.g., Doc. 75-5, p. 4) (The Class Action Notice states that the "settlement has been reached in a proposed class action lawsuit regarding certain COBRA notices provided by Capital One ...").

Clearly, the general release payment does not reduce the settlement class members' recovery by much. However, if this payment were truly independent of the named plaintiff's participation in this case, it is properly paid with funds outside the settlement fund, if not separately contracted for outside of this litigation. See Abercrombie v. TD Bank, N.A., supra, 2022 WL 18779705 at *6 ("If the consideration for the general release between Plaintiff and Defendant is, indeed, different than the consideration for the Settlement between the Settlement Class Members and Defendant, then Plaintiff and Defendant would be free to contract outside of this Action."). Therefore, under these circumstances, the "general release" payment to the named plaintiff appears to merely be a reward for her participation in this lawsuit, which is prohibited under Johnson.

-18-

Although not acknowledged by the plaintiff, there is legal authority in the Middle and Southern Districts of Florida rejecting "general release" payments in class action settlements because they appeared to circumvent Johnson.   See Abercrombie v. TD Bank, N.A., supra, 2022 WL 18779705 at *6; Turner v. Rosen Hotels & Resorts, Inc., supra, 2022 WL 3046834 at *8, report and recommendation adopted, no. 6:21-cv-161-CEM-DAB, 2022 WL 3042512 (M.D. Fla. Aug. 2, 2022)[4]; Thomas v. JSTC LLC, no. 6:19-cv-1528-RBD-GJK (M.D. Fla. Nov 18, 2022) (appeal filed Dec 16, 2022); Benitez v. FGO Delivers, LLC, no. 8:21-cv-0221-KKM-TGW, 2022 WL 486127 at *4 (M.D. Fla. Feb. 17, 2022).

In Turner v. Rosen Hotels & Resorts, Inc., U.S. Magistrate Judge David A. Baker recommended that a general release payment to the named plaintiff in a class action Settlement Agreement be rejected.   He cogently reasoned that

> ... the named plaintiff, uniquely, is being provided something of substantial value: the right to receive cash in exchange for "release" of unidentified claims. The other class members are not being

---

[4] The court ultimately deferred the final determination of the general release payment pending resolution of Johnson, and the parties subsequently withdrew the request "in light of Johnson ...." (case no. 6:21-cv-161, Doc. 54, p. 1).

> offered this opportunity for additional value. Thus,
> this special arrangement for the named plaintiff falls
> squarely within the proscription of <u>Johnson</u>.

2022 WL 3046834 at *8 (M.D. Fla. June 15, 2022). Similarly, in <u>Abercrombie</u>

v. <u>TD Bank, N.A.</u>, <u>supra</u>, 2022 WL 18779705 at *6, the court denied a $5,000

payment from the class action common fund to the named plaintiff in

exchange for the plaintiff's "general release" of all claims against the

defendant, finding that "the supposed 'separate payment' is merely a thinly

veiled attempt to circumvent <u>Johnson</u>."

Moreover, in <u>Thomas</u> v. <u>JSTC LLC</u>, No. 6:19-cv-1528-RBD-

GJK (Doc. 123, p. 7), U.S. District Judge Roy B. Dalton rejected in a

collective action settlement a request for $10,000 payments to three named

plaintiffs in exchange for their general releases of claims against the

defendants, stating that he was "not convinced these actions were not taken

solely to create a workaround of the <u>Johnson</u> prohibition." He reasoned that

offering such payments only to the named plaintiffs "are the type of preferred

treatment that the <u>Johnson</u> decision seeks to avoid" (<u>id.</u>, p. 8).  <u>See also</u>

<u>Benitez</u> v. <u>FGO Delivers, LLC</u>, <u>supra</u>, 2022 WL 486127 at *4 (U.S. District

Judge Kathryn Kimball Mizelle held that, "[w]ithout an adequate explanation,

-20-

the additional ... [general release] payment to [the named plaintiff] appears to be a salary or an incentive award masquerading under another name.").

Similarly, in this case, there is no explanation why the other settlement class members were not offered $5,000 in exchange for a general release, nor does the plaintiff justify this more favorable treatment, or explain why the general release payment comes from the COBRA settlement fund.

The plaintiff argues that "[g]eneral releases that are supported by independent consideration are routinely approved in employment law settlements, including specifically in class action settlement[s] approved after ... Johnson was issued" (Doc. 79, p. 7). General releases in single plaintiff employment cases are not at issue. Furthermore, most of the post-Johnson cases cited by the plaintiff are unpersuasive because they do not address Johnson or are distinguishable in other important respects.

For example, the plaintiff urges the court to follow Jones v. Scribe, no. 8:20-cv-2945-VMC-SPF, in which a general release payment to the class representative was approved (Doc. 79, p. 2; id., Ex. A). However, there is no mention of Johnson in the decision, nor does the plaintiff show that Johnson was brought to the court's attention in the motions for approval of

the settlement agreement (see Docs. 118, 122, 125 in case no. 20-cv-2945).

Similarly, the decisions approving general release payments in McNamara v.

Brenntag Mid-South, Inc., no. 8:21-cv-618 (M.D. Fla. Feb. 17, 2022) (Doc.

32) and Boyd v. Pepperidge Farm, Inc., no. 8:20-cv-780-T-35-JSS (Doc. 50),

2021 WL 2474433 at *2, do not discuss Johnson. Therefore, they do not give

insight into this issue.

Furthermore, the cases of Tweedie v. Waste Pro of Fla., Inc. and

Twardosky v. Waste Management, Inc. are distinguishable. In Tweedie v.

Waste Pro of Fla., Inc., no. 8:19-cv-1827-AEP, 2021 WL 5843111 at *11

(M.D. Fla. Dec. 9, 2021), the court approved a general release payment to the

class representative.   Notably, however, U.S. Magistrate Judge Anthony

Porcelli expressed concern that it was "a thinly veiled attempt at an incentive

award" (id.).  In all events, the general release payment in Tweedie did not

come from the settlement fund, unlike this case (see id., p. 4) (the general

release payment to Tweedie is "separate and apart from the Settlement Fund

so as not to reduce distributions to class members").

Additionally, Twardosky v. Waste Management, Inc., 8:19-cv-

02467-CEH-TGW (M.D. Fla. June 28, 2021) is distinguishable because

-22-

Twardosky previously stated an FMLA claim against the defendant for which his attorney had already sent a demand letter (Doc. 58, ¶13). Thus, there was a colorable reason for offering the class representative and not others a general release.[5]

The plaintiff also emphasizes the Southern District of Florida case of Baja v. Costco Wholesale Corp., 21-61210-CIV, in which U.S. District Judge Raag Singhal approved a general release payment in a class action settlement (Doc. 79, pp. 2-3; Doc. 79-2). He held that Johnson did not apply because "Johnson specifically dealt with an explicit 'incentive payment' awarded in acknowledgement of the named plaintiff's role in prosecuting the case...," whereas Baja's payment was in consideration for a release of other claims (Doc. 79-2, p. 4 n.1). See also Broughton v. Payroll Made Easy, Inc., 2021 WL 3169135 at *4 (M.D. Fla.) (approving payment to named plaintiff in exchange for a general release); Dozier v. DBI Servs. LLC, 2021 WL

---

[5] The plaintiff also emphasizes Muransky v. Godiva Chocolatier, Inc., 922 F.3d 1175, (11th Cir. 1999). In that case, the Eleventh Circuit approved an "incentive award" for the class representative. Id. at 1197. As discussed, Johnson prohibits those awards. Furthermore, as the plaintiff recognizes, Muransky was vacated. 939 F.3d 1278 (11th Cir. 2019).

6061742 at *9 (M.D. Fla.) (same).  However, I find more persuasive the cases cited supra, pp. 17-21, that scrutinize general release payments to determine whether they are "incentive award[s] masquerading under another name." Benitez v. FGO Delivers, LLC, supra, 2022 WL 486127 at *4; see Johnson v. NPAS Sols., LLC, supra, 975 F.3d at 1259 n.9 (citation omitted) ("our precedent carefully scrutinize[s] settlements that give class representatives preferred treatment").

Finally, the plaintiff asserts the public policy argument that "service awards are a critical part of ensuring the effectiveness of employee-based class actions because they help ameliorate the risk of retaliation and loss of income that courts around the county recognize is inherent in bringing a case against an employer, or even a former employer" (Doc. 79, p. 12).  This argument is unpersuasive because Johnson generally rejects favoritism to class representatives; it does not mention exceptions for particular causes of action.  See Johnson v. NPAS Sols., LLC, supra, 975 F.3d 1244, 1259 n. 9 ("[B]y choosing to bring their action as a class action ... named plaintiffs 'disclaim[ ] any right to a preferred position in the settlement.'").

In sum, the $5,000 general release payment to the named plaintiff

gives her unexplained preferential treatment over the other settlement class members, which is impermissible under <u>Johnson</u>.  Therefore, I recommend that the $5,000 general release payment to the named plaintiff be denied.[6]

The plaintiff alternatively requests that, if the general release payment is denied, that the Settlement Agreement be approved and the $5,000 be allocated among the settlement class members as part of the settlement fund (Doc. 79, p. 14).  This is an acceptable resolution.

In <u>In re Equifax Inc. Customer Data Sec. Breach Litig.</u>, <u>supra</u>, 999 F.3d at 1282, the Eleventh Circuit held that a Settlement Agreement could be approved, despite its rejection of the incentive award, because the class representatives' decision to agree to the settlement and to seek its approval was not influenced by the possibility of receiving incentive awards.

Here, the Settlement Agreement specifies that the "disallowance of any general release payment ... [is] separate and apart from the Settlement"

---

[6] Moreover, even if this "general release" payment does not fall within <u>Johnson</u>'s prohibition, the plaintiff has failed to show that offering a $5,000 general release payment solely to her is fair and reasonable.  <u>See</u> <u>Holmes</u> v. <u>Continental Can Co.</u>, 706 F.2d 1144, 1147 (11th Cir. 1983) (emphasis added) ("Proponents of class action settlements bear the burden of developing a record demonstrating that the settlement <u>distribution</u> is fair, reasonable and adequate."); <u>see</u> <u>also</u> Rule 23(e)(2)(D)(requiring evaluation of whether the "proposal treats class members equitably relative to each other").

-25-

and that "[a]ny order ... relating to the general release payment ... shall have no effect on the Settlement, and shall not operate to, or be grounds to, terminate or cancel the Agreement ...." (Doc. 65-2, p. 15).  Thus, the named plaintiff agreed to the proposed Settlement Agreement knowing that she may not receive the general release payment.  Accordingly, there is no reason to think it unduly influenced her agreement to settle.

Furthermore, as in In re Equifax Inc. Customer Data Sec. Breach Litig., supra, 999 F.3d at 1282, the proposed settlement has been independently assessed and is otherwise fair, reasonable and adequate.  In fact, the denial of the general release payment increases its fairness because the $5,000 general release payment is distributed equally among the settlement class members.

I therefore recommend that the Settlement Agreement be approved, except for the general release payment to the named plaintiff.

IV.

Finally, plaintiff's counsel requests an attorneys' fee award of $95,000 to be paid from the settlement fund (Doc. 72).  This amount is equal to one-third of the settlement fund.  The defendant does not oppose this

-26-

motion.

The plaintiff has been represented in this action by Brandon J. Hill, Luis A. Cabassa, and Amanda Heystek. Hill, a Florida Bar member since 2007, practices employment and labor law and has served as counsel in numerous class actions (Doc. 75-2, pp. 1-5). Cabassa has practiced labor and employment law for over twenty years, and also has been appointed as counsel in numerous class actions (Doc. 75-3, pp. 2-5). Heystek, a Florida Bar member since 2000, has served as co-counsel or lead counsel in more than 100 federal cases (Doc. 75-4, pp. 1-2).

Class counsel is entitled to a fee award for their efforts on behalf of the class. Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); see also Fed. R. Civ. P. 23(h). The fee should be based on a percentage of the class settlement fund. See 946 F.2d at 774. Typically, fees fall between 20% to 30% of the fund, but "[t]here is no hard and fast rule mandating a certain percentage." Id.

Relevant factors in making this decision include: the time and labor required; the skill required; preclusion of other employment; customary fees; whether the fee was fixed or contingent; time limitations of the case;

-27-

results obtained; attorneys' experience and ability; undesirability of the case;

relationship with the client; awards in similar cases; substantial objections by

class members; and non-monetary benefits to the class. Id. at 775, n.3;

Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974).

      The relevant factors support an award of the requested attorneys'

fee of $95,000. Counsel invested a substantial amount of time and effort into

the prosecution and resolution of this case. Specifically, they prosecuted this

matter for more than a year, during which they engaged in time-consuming

discovery and motion practice, including drafting a motion for class action

certification, exchanging 1300 documents, deposing the named plaintiff and

the defendant's corporate representative, and participating in an all-day

mediation (Doc. 72, pp. 5-6, 15-16). Furthermore, the process related to

issuing the Notice and finalizing the Settlement Agreement was time

consuming, and class counsel will continue to represent the settlement class

and monitor the completion of the settlement (id., p. 16). In sum, the time and

labor invested in this case, and the time still required to bring this matter to

conclusion, supports the requested attorneys' fee award.

      Furthermore, as counsel's affidavits reflect (Docs. 75-2, 75-3,

75-4), they are highly experienced in prosecuting class action lawsuits. Notably, counsel states that their "reputations for effective handling of complex litigation are known throughout Florida, and the country" (Doc. 72, p. 23). Counsel adds that this expertise is especially important here, as there are relatively few COBRA class action cases and, as such, they present novel and difficult questions of fact and law (id., pp. 17-19). Additionally, counsel has been working entirely on a contingency fee basis, which also warrants consideration of a higher fee due to the risk that counsel could have recovered nothing.

Moreover, although an attorneys' fee of one-third of the common fund is higher than the 20% to 30% benchmark fee discussed in Camden I, it is not beyond what courts, including this one, have awarded when approving class action settlements. See, e.g., Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) (affirming district court's award of attorney's fees totaling one-third of the common fund); Tweedie v. Waste Pro of Fla., Inc., supra, 2021 WL 5843111 at *8 (stating that an attorneys' fee totaling one-third of the common fund "falls within the parameters of reasonable awards of attorney's fees in class action cases"). Plaintiff's counsel identifies, in

particular, cases within this division where their law firm was awarded an attorneys' fee of one-third of the settlement fund, including two COBRA notification cases (Doc. 72, pp. 12-13, 20-21). See Valdivieso v. Cushman & Wakefield, Inc., supra, no. 8:17-cv-00118-SDM-JSS; Carnegie v. FirstFleet, Inc. of Tennessee, Inc., no. 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019).

Significantly, no settlement class member objected to the attorneys' fees request despite having adequate time to do so. Thus, the Motion for Attorneys' Fees (Doc. 72) was filed two weeks before the objection period ended, which is an acceptable length of time to file objections under Johnson v. NPAS Sols., LLC, supra, 975 F.3d at 1248. Additionally, the settlement class members were informed even earlier of counsel's intention to request an attorneys' fee of $95,000 in the Class Action Notice (see Doc. 75-5, p. 8).

Finally, there is no basis for concluding that the attorneys' fee agreement was the product of collusion or fraud. To the contrary, plaintiffs' counsel states that the settlement negotiations were conducted at an arm's-length basis, and fees were not negotiated until after they agreed on the

-30-

amount of the settlement fund and class definition (Doc. 75, pp. 5-7; Doc. 75-2, p. 7).

Accordingly, applying the Camden I factors to the circumstances of this case, an attorneys' fee of $95,000 to class counsel is reasonable and fair.

Finally, the plaintiff requests an award of its litigation costs in prosecuting this action, totaling $6,084.35 (Doc. 72-3, pp. 8-9).  Costs are recoverable in a class action settlement under Rule 23(h), F.R.Civ.P.  Counsel itemized their costs, which include fees for filing, process servers, court reporters, and the mediator (Doc. 72-3, p. 9).  He avers that these costs "were all reasonable and necessary to litigate this case to a resolution" (id., p. 8). Since these fees are regularly reimbursed in these class action cases, and there is no objection to any of them, plaintiff's counsel should be awarded these costs.

V.

For the foregoing reasons, I recommend that the Motions for Final Settlement and for Attorneys' Fees and Expenses (Docs. 72, 75) be granted, and the Settlement Agreement be approved, except for the $5,000 general release payment to the named plaintiff.

Respectfully submitted,

*Thomas G. Wilson*

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: July **10**, 2023

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.